**2218 BRYAN STREET, LTD., Appellant,**

v.

**CITY OF DALLAS, Texas and Raj Sharma, Acting in his Official Capacity as the Building Official for the City of Dallas, Texas, Appellees.**

No. 05–04–00064–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 2005.

Rehearing Overruled Oct. 31, 2005.

Barry R. Knight, Winstead Sechrest & Minick, P.C., and Jason Clarke Marshall, The Marshall Firm PC, Dallas, for Appellant.

Christopher D. Bowers and Barbara E. Rosenberg, Asst. City Attys., Dallas, for Appellees.

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MORRIS.

This case arose after the City of Dallas prevented the demolition of a building in downtown Dallas commonly known as the "Old Dallas High School." We now must examine the applicability of Chapter 245 of the Texas Local Government Code to determine whether appellant 2218 Bryan Street, Ltd. had an absolute right to demolish the buildings on its property. We also must determine whether appellees City of Dallas and Raj Sharma, acting in his official capacity as the building official for the city, violated appellant's due process rights and whether certain city regulations constituted an impermissible taking of appellant's property in violation of the Texas Constitution. The trial court granted a partial summary judgment in favor of appellees concluding appellant had no right to a demolition permit pursuant to Chapter 245. And, after a non-jury trial, the trial court rendered a final take-nothing judgment on appellant's due process and regulatory taking claims. Concluding the trial court was correct, we affirm its judgment for the reasons set forth below.

### I.

Appellant purchased a 5.489 acre parcel of land in downtown Dallas. Its purchase, however, was after the city landmark commission instituted proceedings to consider whether the property should be designated a historic district. Under the Dallas City Code, initiation of the procedure to consider historic designation of the property imposed a moratorium prohibiting the city's acceptance of all applications for permits to alter or demolish any structure on the property. The moratorium was in effect when appellant submitted its first application for a demolition permit on September 13, 1999. At that time, the city code listed several events that would end the moratorium. Of particular relevance here is the provision that ends the moratorium on the 180th day after the filing date of a written request for hardship relief that has not been granted.

On September 28, 1999, appellant filed a written request for hardship relief from the moratorium. Appellant's hardship request was not granted. After the denial, but before the 180–day period expired, the city adopted a new ordinance, Ordinance No. 24163, amending its historic regulations to delete the 180–day provision and adding new standards governing applications for demolition permits for properties with pending historic designations or within historic overlay districts. On April 4, 2000, over 180 days after the date appellant filed its hardship request, appellant demanded a demolition permit relying on its application submitted previously in September. Appellees refused, asserting appellant's application was incomplete under the newly enacted regulations. On December 13, 2000, the city council passed another ordinance, Ordinance No. 24469, designating 1.13 acres of appellant's property, containing the 1907 high school building and a 25 foot no-build zone around the high school, as Historic Overlay District No. 101.

Appellant sued appellees for a writ of mandamus ordering the building official to issue a demolition permit and for damages from the city's alleged regulatory taking and due process violations. Appellant then moved for partial summary judgment asserting that, under Chapter 245 of the Texas Government Code, its right to demolish all buildings on the property after the 180–day waiting period vested as a matter of law when it submitted its September 13, 1999 application for a demolition permit. Appellees filed a cross-motion for partial summary judgment arguing that Chapter 245 did not apply. The trial court denied appellant's motion and granted appellees' cross-motion for partial summary judgment concluding both of the newly enacted ordinances were exempted from the provisions of chapter 245. After a trial before the court on appellant's due process and regulatory taking claims, the trial court rendered its final take-nothing judgment in favor of appellees.[1] This appeal followed.

## II.

We first address the trial court's ruling with respect to the applicability of Chapter 245. Questions of law are appropriate matters for summary judgment. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). We consider all summary judgment grounds the trial court expressly ruled on and the movant preserves for appellate review that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex. 1996). In the interest of judicial economy, we may also consider other preserved grounds that the trial court did not rule on. *Id.*

In its first issue, appellant argues Chapter 245 of the Texas Local Government Code required the city to issue a demolition permit for the building 180 days after appellant filed its written request for hardship relief on September 28, 1999 irrespective of the city's later adoption of Ordinances 24163 and 24469. *See* TEX. LOCAL GOV'T CODE ANN. § 245.001 *et seq.* (Vernon

---

1. Appellant submitted all liability issues on its takings and due process claims to the trial court, reserving for a jury questions of damages. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 932 (Tex.1998).

Supp.2004–05). Section 245.002 provides in part:

> (a) Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the permit is filed.

Appellant contends that either its September 13, 1999 application for a demolition permit or its September 28 request for hardship relief triggered the protections of Chapter 245 and, thus, prohibit the city from denying it a demolition permit based on later-adopted ordinances. Appellant further argues that Chapter 245 requires the city to issue a demolition permit in accordance with former city code section 51A–4.501(a)(2)(C), which provided for the end of the moratorium 180 days after the filing date of a request for hardship relief. Appellees, on the other hand, contend Chapter 245 does not apply because no permit could be filed during the moratorium. And, because the city adopted new demolition standards for properties under consideration for historic designation before the moratorium ended, the newly enacted standards properly applied to any permit later filed by appellees. We agree with appellees.

The event that invokes the protections of Chapter 245 is the filing of an application for a permit. *See* TEX. LOCAL GOV'T CODE ANN. § 245.002(a). Appellant does not challenge the validity of the moratorium that was in place on September 13, 1999 when it attempted to file its application. According to the city code provisions in effect at that time, the city could not accept any applications for demolition permits for appellant's property. *See* § 51A–4.501(a)(2). Thus, appellant's September 13 application was not accepted and therefore not filed as required by Chapter 245. A review of the permit application contained in the summary judgment evidence confirms the application dated September 13 has no "filed" stamp. In fact, the application reflects that it was "On hold for Hist." Accordingly, the September 13 application did not invoke the provisions of Chapter 245.

Appellant argues that even if its September 13 application did not trigger the application of Chapter 245, its request for hardship relief filed on September 28, 1999, before the city enacted the two new ordinances was a permit as defined by Chapter 245 and, thus, entitled it to consideration under the regulations in effect at the time its request for hardship relief was filed. Chapter 245 defines a permit as follows:

> "Permit" means a license, certificate, approval, registration, consent, or other form of authorization required by law, rule, regulation, order, or ordinance that a person *must* obtain to perform an action or initiate, continue, or complete a project for which the permit is sought.

TEX. LOCAL GOV'T CODE ANN. § 245.001(1) (emphasis added). A request for hardship relief is not a request for an "approval" or some "other form of authorization required by law" that appellant "must obtain to perform an action or initiate, continue, or complete a project." Unlike an application for a demolition permit, a request for hardship relief is merely an available means for expediting the termination of a moratorium otherwise imposed by the initiation of the historic designation process. Appellant was not required to seek hardship relief to eventually proceed with its planned demolition. In fact, its request for hardship relief was denied. The denial itself, however, did not preclude appellant from pursuing its demolition plans. The

former city code provided that if hardship relief was not granted, as happened here, the moratorium would end and appellant could proceed with its application for a demolition permit 180 days after the hardship request was initially filed. Accordingly, the filing of a request for hardship relief is not a permit to which Chapter 245 applies.

Because the summary judgment evidence conclusively establishes that appellant did not file an application for a permit before Ordinance 24163 was enacted, Chapter 245 does not apply. Having concluded Chapter 245 is inapplicable because appellant did not file a permit application before Ordinance 24163 was enacted, we need not address appellant's remaining arguments with respect to whether Ordinances 24163 and 24469 are exempt from the provisions of Chapter 245. The trial court did not err in granting appellees' motion for partial summary judgment. We resolve appellant's first issue against it.

■ In its second issue, appellant asserts the process by which the city established a historic designation on appellant's property denied it substantive due process under the U.S. and Texas Constitutions. Appellant first asserts the city's moratorium, which began on March 7, 1995, was in effect for an unreasonably long time because the city took no action relating to the historic designation on appellant's property after instituting the moratorium until appellant submitted its demolition permit application on September 13, 1999, four and a half years later.

■ The ultimate determination of whether a moratorium violates due process is a question of law, but we depend on the trial court to resolve disputed facts with respect to the particular circumstances involved in the application of the moratorium. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932–33 (Tex. 1998). The trial court made several specific findings of fact with respect to appellant's due process claims, including: (1) that the city's moratoriums on the acceptance of applications for permits concerning the property had a definite end and a property owner could trigger the moratorium's end for his property; (2) the city took five years to establish a historic overlay district on the property because city staff had a heavy workload and there was no threat to the existence of the high school until appellant purchased the property; (3) the city has taken longer than five years to establish a historic overlay district on several other properties; (4) the city did not complete the establishment of a historic overlay district on the property when the school district owned it because the city had no reason to believe the school district ever planned to demolish the high school; (5) the city completed the establishment of a historic overlay district on the property after appellant purchased the property because appellant's representatives told the city it intended to demolish the high school.

■ A court may not strike down a zoning determination for a substantive due process claim unless it is clearly arbitrary and unreasonable. *Mayhew*, 964 S.W.2d at 938 (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88, 48 S.Ct. 447, 72 L.Ed. 842 (1928)). An ordinance will pass constitutional muster if it is designed to accomplish an objective within the government's police power and a rational relationship exists between the ordinance and its purpose. *Id.* Here, the trial court's unchallenged findings of fact support the determination that the imposition and duration of the moratorium in question was reasonable and did not violate appellant's due process rights. We therefore reject appellant's argument to the contrary.

Also under its second issue, appellant argues it was denied due process because the city unlawfully delegated legislative authority to the landmark commission. Appellees respond that this claim is barred by the two-year statute of limitations and by appellant's failure to serve the attorney general with notice of its constitutional challenge as required by section 37.006(b) of the Texas Civil Practice and Remedies Code. The trial court made findings of fact that appellant did not provide any evidence that it gave the Texas Attorney General a reasonable opportunity to enter an appearance and be heard on the issue of unconstitutional delegation of legislative authority. The trial court also found that appellant did not assert its unlawful delegation of legislative authority within two years after the date that those claims arose or that they were discovered or should have been discovered. Appellant did not challenge these findings in its brief. Because the trial court's rejection of appellant's unlawful delegation claim can be affirmed on these unchallenged alternative grounds, we need not address the merits of appellant's argument. *See Perez v. Tex. Dept. of Prot. and Reg. Serv.*, 148 S.W.3d 427, 433–34 (Tex.App.-El Paso 2004, no pet.). To the extent appellant attempts to address these alternate grounds in its reply brief, we note the Texas Rules of Appellate Procedure do not allow appellant to include in a reply brief a new issue in response to a matter raised in appellee's brief but not raised in appellant's original brief. *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex.App.-Austin Worth 2004, pet. denied). Moreover, a matter is not raised by an appellee where, as here, it merely points out the absence of appellant's argument on an issue. We resolve appellant's second issue against it.

In its third issue, appellant asserts the trial court erred in concluding the city's regulations and denial of a demolition permit did not constitute a taking of property in violation of the Texas Constitution. A regulatory taking occurs when the government regulation either deprives the owner of all economically viable use of the property or totally destroys the property's value or has a severe enough economic impact and interferes with distinct investment-backed expectations. *See Mayhew*, 964 S.W.2d at 936–937. The ultimate determination of whether the facts are sufficient to constitute a taking is a question of law that we review de novo. *Id.* We rely on the trial court, however, to determine disputed facts such as the extent of the governmental intrusion on the property and the diminution in the property's value in assessing whether the city has taken appellant's property without just compensation. *Id.* We review the legal sufficiency of the trial court's findings viewing the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 809 (Tex. 2005). For a factual sufficiency review, we must determine whether the trial court's finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam).

Appellant contends the evidence at trial establishes conclusively a taking under both of the above standards. To support its contentions, appellant relies on the testimony of its expert appraiser Peter Malin.[2] Malin testified the value of the prop-

**2.** Although appellant notes that another witness also presented evidence on the proper-

erty entirely vacant would be worth $11.9 million or more, while with the regulations requiring adaptive reuse of the high school, the property had no value or a negative value. The negative market value was based upon comparing the costs of renovating the high school with its anticipated income stream and then redistributing the resulting loss to the remaining 4.3 acres where development is unaffected by the regulations. Malin indicated that after making the required renovations, which would cost, at a minimum, $13,000,000, the property as a whole would be worth only $5,100,000. After allocating the resulting loss from the cost of the appellant's renovation proposals to the remaining vacant land, the effective cost of the remaining site would be $109.00 to $114.00 per square foot. Malin opined that requiring appellant to reuse the high school would effectively mean the cost of the entire property per square foot would be significantly higher than comparable properties. This would render the property as a whole unmarketable and, thus, undevelopable. Because the fair market value of the vacant, excess land would be only $35 to $40 per square foot, Malin stated that resale and development under the city regulations would be prohibitively expensive.

Malin's value opinion was based on many assumptions. First, he assumed the high school would be converted to either a mixed-use development containing offices and retail or residential lofts. He relied on other experts to determine the cost, scope, and nature of these renovations and the amount of income that would be generated from these uses for ten years.

The trial court was not impressed with Malin's testimony and made a

specific finding of fact that his conclusions were not credible. Among the 31 reasons the trial court listed to support its credibility determination, the court noted that for his feasibility analysis of the property, Malin limited his development plans to renovating the high school, which encompassed only 115,000 or 150,000 square feet of the property, and did not consider development of the remainder of the property in conjunction with the high school restoration. The trial court also indicated Malin failed to consider other development plans and questioned the comparable sales he used in arriving at his value determination. Additionally, the trial court indicated that Malin did not consider the economic value of a facade easement, transfer of development rights, infrastructure cost sharing, a rebate of development fees, a federal low income housing tax credit, or a state sales tax and use exemption when evaluating the financial feasibility of restoring the high school. The trial court also noted that Malin relied on appellant's other experts whose testimony the court also specifically found not to be credible. If an expert's opinion is based on certain assumptions about the facts, we cannot disregard evidence showing those assumptions were unfounded. *Keller,* 48 Tex. Sup.Ct. J. at 852. A fact finder may even disregard uncontroverted expert testimony unless the subject matter is one for experts alone. *Id.* at 812–13.

Moreover, there was also evidence that a portion of the property was currently being used as a parking lot which generates $7,500 per month in income. Appellees provided evidence from expert witnesses indicating the high school could be successfully and profitably renovated based on

---

ty's value, it has not set forth any record citations indicating the location of the relevant testimony. It is not our duty to make an independent search of the record for evidence

supporting a party's position. *See Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).

renovations performed on similar historic buildings in Dallas and Fort Worth. There was also evidence that the renovation cost estimates Malin used for his valuation opinion were too high.

Appellant argues that because appellees provided no valuation evidence whatsoever, it was error for the trial court to file findings of fact contradicting appellant's evidence. Appellant essentially contends that because it provided the exclusive valuation evidence, the trial court was obligated as matter of law to accept this evidence and incorporate it into its findings of fact, irrespective of the trial court's findings that the testimony of its experts was not credible. Appellant has cited no authority to support its position, and we have found none. And we do not accept appellant's argument. To accept appellant's argument would usurp the trial court's role as the sole judge of the credibility of the witnesses and the weight to give their testimony. We may not impose our own opinions about the credibility of witnesses to the contrary. *See Keller*, 168 S.W.3d at 817–18.

Although appellant does not specifically attack the trial court's credibility findings, our review of the record reveals that appellees' cross-examination and expert witnesses cast serious doubt on Malin's valuation testimony. After reviewing the record in a light most favorable to the verdict and affording the trial court due deference on credibility issues, we conclude the trial court's findings that the value of appellant's property was not entirely destroyed and that there was no significant economic impact or interference with appellant's reasonable invest-

ment backed expectations by the regulations at issue was supported by legally and factually sufficient evidence.

Under this same issue, appellant also complains the trial court's rejection of appellant's market value analysis necessarily demonstrates the trial court applied an inappropriate standard for determining whether a taking occurred. We disagree. The trial court found many flaws in Malin's market value analysis and gave numerous reasons for discrediting his testimony. The evidence was legally and factually sufficient to support the trial court's determination that Malin's testimony was not credible. Without Malin's testimony being credible to the trial court on the value of the property before and after the city regulations, appellant failed to establish a taking under any standard. Based on the record before us, we conclude the trial court did not err in concluding that the city regulations and denial of a demolition permit did not constitute a regulatory taking of appellant's property.

We conclude the trial court properly granted summary judgment in favor of appellees on appellant's Chapter 245 claim. We further conclude the trial court did not err in rendering a take nothing judgment on appellant's due process and regulatory taking claims.

We affirm the trial court's judgment.