JAMES L. GANG & ASSOCIATES,
INC. and James L. Gang,
Appellants,

v.

ABBOTT LABORATORIES,
INC., Appellee.

No. 05–05–00681–CV.

Court of Appeals of Texas,
Dallas.

July 25, 2006.

Richard A. Smith, Jeffrey M. Tillotson, Edward Jason Dennis, Lynn, Tillotson & Pinker, L.L.P., William M. Ravkind, Ravkind & Associates, Dallas, for appellants.

Cheryl L. Mann, Baker & Botts, L.L.P., Dallas, for appellee.

Before Justices MORRIS, O'NEILL, and RICHTER.

## OPINION

Opinion by Justice O'NEILL.

James L. Gang and James L. Gang & Associates, Inc. (collectively "JLGAI") appeal from a summary judgment rendered in favor of Abbott Laboratories. In five points of error, JLGAI contends generally that: (1) the trial court erred in granting summary judgment on its breach of contract claims on the ground that there is no evidence of damages; (2) the trial court erred in finding that Abbott did not breach one of the contracts; (3) the trial court erred in granting summary judgment on the alleged oral agreements on statute of frauds grounds; and (4) the trial court erred in granting summary judgment on its claims for fraud and fraudulent inducement. We overrule JLGAI's points of error and affirm the trial court's judgment.

## Background

Abbott manufactures diagnostic medical instruments. Since the 1980s, Gang had done business with Abbott on behalf of several companies. One of those companies was C–Power Products, Inc. C–Power was one of Abbott's component parts suppliers until the fall of 1999. C–Power had financial difficulties. In 1999, Gang formed JLGAI and began managing C–Power pursuant to an interim management agreement that anticipated Gang's eventual purchase of the financially troubled company.

In January 2000, Gang formed Koors Technology. JLGAI was the sole shareholder of Koors. Pursuant to a written purchase agreement, Koors purchased the assets of C–Power on January 28, 2000. Gang contends Abbott promised him tremendous amounts of business in order to induce him to purchase C–Power.

Abbott filed suit against JLGAI for $7,700 on an unpaid account. JLGAI counterclaimed alleging numerous causes of action including breach of contract, fraud, and fraudulent inducement. Abbott filed both a traditional and no-evidence motion for summary judgment as to JLGAI's counterclaims. Abbott nonsuited its claims against JLGAI. The trial court granted summary judgment in favor of Abbott. This appeal timely followed.

## Standard of Review

The standard of review for a summary judgment is well-established. Tex.R. Civ. P. 166(c); *Black v. Victoria Lloyds Ins.*

*Co.,* 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. In the interest of judicial economy, a reviewing court should consider all grounds for summary judgment that the trial court rules on and the grounds the trial court does not rule on. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996); *2218 Bryan Street, Ltd. v. City of Dallas,* 175 S.W.3d 58, 62 (Tex.App.-Dallas 2005, pet. denied).

## The Written Contracts

In its first point of error, JLGAI contends the trial court erred in ruling that all of its breach of contract claims were barred because there was no evidence of damages. We will address each of the alleged written agreements in turn.

### 1. Purchase Agreement 855

In addition to no damages, the trial court also ruled that "the unambiguous contract language and the summary judgment record conclusively establish that Abbott did not breach Purchase Agreement 855." In its third point of error, JLGAI contends the trial court erred in ruling that Abbott did not breach Purchase Agreement 855.

■ Express terms of a contract control over course of dealing. TEX. BUS. & COM. CODE ANN. § 1.303(e)(1) (Vernon Supp. 2005). When a contract is unambiguous, a court does not consider course of dealing. *See Frost Nat'l Bank v. L & F Distributors, Ltd.,* 165 S.W.3d 310, 313 n. 3 (Tex. 2005).

■ Purchase Agreement 855 states that "Seller understands and agrees that Buyer has made no guarantee or commitment hereunder to purchase any minimum quantity of these Products and that the quantities of Products actually purchased may vary from the estimates listed in Table One." The agreement also states that "firm orders shall only be on purchase orders issued hereunder."

JLGAI contends its summary judgment evidence raises a fact issue as to Abbott's breach of Purchase Agreement 855. JLGAI's summary judgment evidence consisted of excerpts from Gang's deposition, Gang's affidavit, and deposition excerpts from Abbott employee Charles Gault. In his deposition, Gang testified that Purchase Agreement 855 represented a commitment, not a mere estimate. He testi-

fied that is how Abbott did business. JLGAI's evidence relating to course of dealing between itself and Abbott is not relevant in the face of an unambiguous contract. *See Frost Nat'l Bank,* 165 S.W.3d at 313 n. 3.

Gault testified that he did not always prepare monthly usage projections as set forth in Purchase Agreement 855. Usage projections are merely forecasts. Orders for products were to be only on purchase orders. Accordingly, failure to provide the monthly usage projections did not result in any damages to JLGAI.

We conclude the trial court did not err in granting summary judgment on JLGAI's claim for breach of Purchase Agreement 855. We overrule JLGAI's third point of error.

### 2. Purchase Order 201329

■ In its first point of error, JLGAI contends the trial court erred in granting summary judgment on its claim for breach of purchase order 201329 on that ground that there was no evidence of damages. In addition to the ground of no evidence of damages, Abbott also asserted that summary judgment was proper because purchase order 201029 had not been breached.

Abbott's summary judgment evidence included the affidavit of James Gaither, a purchasing manager for Abbott. Abbott issued purchase order 201329 to C–Power on January 26, 1999. Gaither testified that Abbott received and paid for 248 power supplies under purchase order 201329. In July 1999, Abbott canceled its order for 150 power supplies. It negotiated and paid to C–Power a cancellation fee of $86,400. Gang stated in his affidavit that "Abbott additionally breached the contract by failing to pay $86,000 as a cancellation charge for canceling part of the order in the contract on a negotiated basis." However, Gang's statement is refuted by Ab-

bott's summary judgment evidence showing that the cancellation fee was, in fact, paid. Revision 35 to purchase order 201329 references the cancellation of the 150 power supplies and the cancellation fee. The summary judgment evidence includes a copy of the check and an itemization showing payment of the cancellation fee.

Due to numerous revisions to purchase order 201329, Abbott cancelled out the remaining items under purchase order 201329. Abbott issued purchase order 201408 for the remaining power supplies cancelled under 201329. Abbott purchased and paid for all power supplies under purchase order 201408. Abbott's summary judgment evidence conclusively established that it paid for all but 150 power supplies covered by purchase order 201329. As to the 150 power supplies Abbott canceled, it paid JLGAI the negotiated cancellation fee. This evidence conclusively established that Abbott did not breach purchase order 201329. Accordingly, the trial court did not err in granting summary judgment on JLGAI's claim for beach of this purchase order.

### 3. Purchase Order 278775

Abbott moved for summary judgment on the grounds that it did not breach purchase order 278775 and there was no evidence of damages. The trial court granted summary judgment on the damages ground.

■ On November 30, 2000, Abbott faxed a cover sheet to JLGAI referencing a need for 3,192 units of tubing. The cover sheet referenced purchase order 278775. Abbott requested JLGAI to provide a price for the tubing units and inquired if JLGAI could meet specified delivery dates. JLGAI returned the fax to Abbott with a price written in and a notation that some of the tubing had a long

lead time. That same day, Abbott faxed the cover sheet back to JLGAI instructing JLGAI to cancel the order. One week later, Abbott issued purchase order 278780 for the same 3,192 units of tubing at the same price per unit that JLGAI had written in on the fax one week earlier. The only difference was slight variances in the delivery dates. JLGAI does not dispute that Abbott purchased and paid for all 3,192 units of tubing under purchase order 278780.

We conclude Abbott conclusively established that the items referenced on the fax cover sheet were purchased and paid for by Abbott under purchase order 278780. Thus, the trial court did not err in granting summary judgment on JLGAI's claim for breach of purchase order 278775.

### 4. Purchase Order 272402

With respect to purchase order 272402, Abbott moved for summary judgment on the grounds that it was unenforceable under the statute of frauds and there was no evidence of damages. The trial court granted summary judgment on the ground that there was no competent evidence of damages.

Abbott sent a fax to JLGAI in February 2000 referencing purchase order 272402. Abbott never issued a purchase order under that number. Neither Abbott nor JLGAI could locate such a purchase order in their records. Nevertheless, in his affidavit, Gang testified to JLGAI's damages resulting from the alleged breach of purchase order 272402 as follows:

> JLGAI suffered damages in the amount of $200,000 for Purchase Order 272402. As a result of Abbott's breach, JLGAI suffered approximately $120,000 in lost profits and incurred $80,000 in expenses for purchase of the inventory necessary to fulfill the contract. I attach as Ex-

hibit 8, the way in which I calculated JLGAI's damage.

The trial court struck all of the above affidavit testimony with the exception of exhibit 8 on the ground that it was conclusory. JLGAI contends the trial court erred in sustaining Abbott's objections to this testimony. We disagree. Conclusory statements in affidavits are not proper summary judgment evidence if there are no facts to support the conclusions. *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366 (Tex.App.-Dallas 2005, no pet.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

Gang's affidavit testimony is conclusory. Gang provided no facts or figures to support his approximation of expenses. Moreover, exhibit 8 does not provide any facts or figures that can be related to purchase order 272402. Exhibit 8 consists of seven unrelated pages including three charts, two fax cover sheets, and a two-page spreadsheet. None of the figures in exhibit 8 match the damage estimates for the alleged breach of purchase order 272402 as testified to by Gang in his affidavit. We conclude the trial court did not err in granting summary judgment on JLGAI's claim for breach of purchase order 272402.

We conclude the trial court properly granted summary judgment on JLGAI's claims for breach of the written contracts. Accordingly, we overrule JLGAI's first point of error.

### The Statute of Frauds

In its second point of error, JLGAI contends the trial court erred in granting summary judgment on its claims that Abbott breached several oral contracts. The trial court granted summary judgment on the grounds that the alleged oral contracts violated the statute of frauds.

▬ A contract for the sale of goods for the price of $500 or more is not enforceable unless there is some writing sufficient to indicate that a contract has been made between the parties and signed by the party against whom enforcement is sought. TEX. BUS. & COM.CODE ANN. § 2.201(a) (Vernon 1994). There is an exception to the writing requirements for merchants. "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received." TEX. BUS. & COM.CODE ANN. § 2.201(b) (Vernon 1994). A writing that contains futuristic language does not constitute a confirmation of a contract already in existence. *Martco, Inc. v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 928 (Tex.App.-Dallas 1982, no writ). If a writing does not constitute a confirmation, then the merchant exception does not apply and the contract is subject to the statute of frauds. *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex.App.-Houston [1st Dist.] 1988, pet. denied).

### 1. Alleged Oral Contracts

### a. Oral Contract for Purchase of 250–500 Power Supplies

■ JLGAI contends it had an oral contract with Abbott to purchase 250–500 power supplies. JLGAI further contends that the merchant exception to the statute of frauds applies to this oral contract. JLGAI contends that the merchant exception applies because JLGAI and Abbott are both merchants. JLGAI relies upon a letter it wrote to Judy Wells at Guaranty Bank on May 8, 2000, as the writing confirming the agreement between itself and Abbott. The problem with JLGAI's contention is that its letter to the bank is not a written confirmation between merchants. JLGAI cites no authority for its contention that a letter it sends to a third party satisfies the merchant exception as a writing confirming an agreement between itself and Abbott. In this letter, JLGAI states: "After Abbott is paid back for the above we are to receive a new purchase order on IPLS for 250 to 500 units ..." Gang informs the bank that it will receive a new purchase order *in the future if a condition is met.* As such, the writing is not a confirmation. *See Martco, Inc.*, 632 S.W.2d at 928. Because JLGAI attempts to hold Abbott liable under the merchant exception based upon written memorandum between itself and a third party, we conclude the merchant exception is inapplicable in this circumstance. The trial court properly granted summary judgment on statute of frauds grounds.

### b. Oral Contract for $1,200,000 in New Business

JLGAI also contends that the merchant exception to the statute of frauds applies to an alleged oral contract for $1,200,000 in new business. Again, JLGAI relies upon a letter to its bank as evidence of the oral contract.

JLGAI sent the letter to Wells at the bank on January 20, 2001. There are two problems with JLGAI's reliance upon this letter. First, it is a letter from JLGAI to the bank, not Abbott. Thus, it is not a written confirmation between merchants. Second, the letter confirms nothing. The letter references a conference call between Gang, Wells and Abbott employee Jim Neal. Gang states in the letter that instead of paying JLGAI money allegedly owed, Abbott "would rather give [JLGAI] approximately $1,200,000 in new business ..." He goes on to state that Abbott said JLGAI "would have opportunities to quote new business if [JLGAI] could offer cost

savings ..." The letter confirms nothing other than JLGAI's hope that it will receive new business from Abbott in the future. We conclude such writing does not come within the merchant exception to the statute of frauds. *See Martco, Inc.,* 632 S.W.2d at 928. Accordingly, the trial court did not err in granting summary judgment on the basis of the statute of frauds.

### c. Oral Contract for Purchase of 500 Incubators

JLGAI also contends the trial court erred in granting summary judgment on its claim that Abbott breached an oral agreement to purchase 500 incubators. To avoid the statute of frauds, JLGAI relies on another exception under the statute that provides:

> (c) A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable
>
> * * *
>
> (2) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; ...

TEX. BUS. & COM.CODE ANN. § 2.201(c)(2) (Vernon 1994). By its very terms, this statutory exception to the statute of frauds does not apply to the alleged oral contract for the purchase of 500 incubators.

 Jim Neal, a former Abbott employee, stated in his affidavit that Abbott did have an oral agreement with JLGAI to purchase 500 incubators. Neal's affidavit is dated October 13, 2004. In his affidavit, Neal states, "I *was* employed by Abbott Laboratories from 1984 until December 2003." (emphasis supplied). To constitute an admission of a party, the statement must be made by a party's agent concern-

ing a matter within the scope of his employment and made *during* the existence of the employment relationship. *See Excel Corp. v. Porras,* 14 S.W.3d 307, 314 n. 1 (Tex.App.-Corpus Christi 1999, pet. denied); *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 28 (Tex.App.-San Antonio 1998, pet. denied).

JLGAI seeks to enforce the alleged oral contract to purchase 500 incubators against Abbott. Abbott has consistently denied the existence of the oral contract. We conclude Neal's affidavit testimony to the contrary made after his employment with Abbott had ended does not constitute an admission on Abbott's behalf that would take the alleged oral contract out of the statute of frauds. Accordingly, the trial court did not err in granting summary judgment on JLGAI's claim for breach of an oral contract to purchase 500 incubators.

### 2. PPV Spreadsheet

 Also under its second point of error, JLGAI contends the trial court erred in granting summary judgment on JLGAI's breach of contract claim involving the PPV Spreadsheet. "PPV" stands for purchase price variance. The spreadsheet was prepared by Abbott and shows the prices Abbott wants to pay for parts, the price JLGAI wants to charge for parts, and the variance between the prices. JLGAI contends the spreadsheet constitutes a contract guaranteed by Abbott employee Richard Wheatley. We disagree and conclude that the trial court properly granted summary judgment on statute of frauds grounds.

To support its contention that the PPV spreadsheet was a binding contract, JLGAI cites to the Neal and Gang affidavits. Neal stated in his affidavit that the PPV Spreadsheet reflected the agreement reached between Abbott and JLGAI re-

garding orders to be placed in 2001 and the Abbott employee Richard Wheatley guaranteed that the parts listed on the spreadsheet would be ordered in 2001. However, as pointed out earlier in the opinion, Neal, by his own admission, was a former employee at the time he gave his affidavit. Thus, his testimony is not relevant to the analysis and does not constitute an admission by Abbott that the spreadsheet represented an agreement. *See Excel Corp.*, 14 S.W.3d at 314 n. 1; *McEwen*, 975 S.W.2d at 28.

JLGAI cites Gang's affidavit testimony as to damages resulting from the alleged breach of the PPV spreadsheet. Gang's testimony does not support the existence of a contract. Abbott presented the deposition testimony of Wheatley who explained that he faxed a copy of the PPV Spreadsheet to JLGAI as part of negotiations attempting to minimize the price variances.

The spreadsheet does not show an agreement between Abbott and JLGAI. It merely list parts with varying prices. We conclude the PPV Spreadsheet is not sufficient to show that a contract has been made and, therefore, is barred by the statute of frauds. Thus, the trial court did not err in granting summary judgment on JLGAI's claim for breach of the PPV Spreadsheet.

We conclude the trial court properly granted summary judgment on all of JLGAI's breach of alleged oral contract claims. We overrule JLGAI's second point of error.

### Fraud and Fraudulent Inducement Claims

■ In its fourth point of error, JLGAI contends the trial court erred in granting summary judgment on its claim for fraudulent inducement. In the absence of an enforceable contract, a party cannot maintain a claim for fraudulent inducement. *Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex.2001). We have held that the alleged contracts on which JLGAI relies are unenforceable. For this reason, JLGAI's fraudulent inducement claim fails. *Id.* We overrule JLGAI's fourth point of error.

In its fifth point of error, JLGAI contends the trial court erred in granting summary judgment on its fraud claim. The trial court ruled that there was no competent summary judgment of reliance damages.

■ The statute of frauds bars fraud claims seeking to recover as damages the benefit of a bargain unenforceable under the statute of frauds. *Haase,* 62 S.W.3d at 799. The statute of frauds, however, does not a bar a claim for fraud to the extent a party seeks reliance or out-of-pocket damages because such damages are not part of the benefit of the alleged bargain between the parties. *Haase,* 62 S.W.3d at 799–800 (holding that despite the fact that the statute of frauds prevents enforcement of the agreement, a plaintiff can recover out-of-pocket damages incurred in reliance on the alleged false representation).

■ Conclusory statements in an affidavit unsupported by facts are insufficient to support or defeat summary judgment. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ).

■ To support reliance damages, JLGAI relies on the following excerpts from Gang's affidavit:

Because JLGAI and I relied on Abbott's representations described above, JLGAI and I spent large sums of money to be able to fulfill the orders that Abbott promised would be forthcoming. A partial—but far from complete—list of those expenditures includes:

* Roughly $350,000 spent by JLGAI between October 1999 and May 2000 to purchase inventory necessary to fulfill Abbott's promised orders for additional IPLS power supply orders, plus much more spent to purchase IPLS inventory that had been consigned to C–Power by Abbott, but for which C–Power had not paid Abbott.

* Approximately $120,000 spent to purchase additional inventory necessary to fulfill Abbott's promised orders for 2001, based on Richard Wheatley's promise that Abbott would guarantee and JLGAI could rely upon all of the orders shown in his "PPV Spreadsheet."

* More than $1.7 million in personal loans from myself to JLGAI, made between October 1999 and May 2000 for the purpose of enabling JLGAI to purchase inventory, equipment, and other necessities to fulfill Abbott's promised business. Those personal loans have never been repaid to me by the company, and the loss of Abbott's business has prevented JLGAI from having the funds to repay the loans.

* Approximately $189,000 paid by JLGAI in payment of C–Power's old debts to other suppliers, at Abbott's insistence, even though JLGAI did not assume those debts when it purchased the company's assets.

⁂ ⁂ ⁂

Abbott bought far less than the $1.9 million worth of products that Richard Wheatley had guaranteed for 2001 for his "PPV Spreadsheet." Instead of entering into a new contract to replace

Purchase Agreement 855 and agreeing to higher prices for JLGAI's goods, Abbott placed only individual purchase orders and refused to pay the full prices as notified and invoiced by JLGAI. And ultimately, Abbott bought less that $1.3 million of the $1.9 million worth of products that Richard Wheatley had guaranteed for 2001 for this "PPV Spreadsheet."

In his affidavit, Gang claims both he personally and JLGAI expended large sums of money in reliance on Abbott's alleged promises. Gang fails, however to include any facts and figures to support his conclusions. Gang's testimony merely provides estimates as to amounts JLGAI expended to purchase parts to fill orders. In the absence of facts, data, or figures, these conclusory statements of expenditures do not constitute competent summary judgment evidence of reliance damages. *El Dorado Motors, Inc.*, 168 S.W.3d at 366. In *El Dorado Motors*, this Court held that mere allegations of expenses without objective facts, figures, or data does not amount to any evidence of out-of-pocket damages. *Id.* at 367–68.

In conclusion, we hold the trial court did not err in granting summary judgment on JLGAI's fraudulent inducement claim because there is not an enforceable agreement. Also, the trial court did not err in granting summary judgment on JLGAI's fraud claim in the absence of any competent evidence of reliance damages. We overrule JLGAI's fourth and fifth points of error.

We affirm the trial court's judgment.