Reversed and Remanded and Memorandum Opinion filed March 11, 2008








Reversed and
Remanded and Memorandum
Opinion filed March 11, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00579-CV

____________

 

MAGGIE FENG HONG, BO HONG, IAE
SUPPLY, INC. AND IAE ENERGY & SUPPLIES, INC., Appellants

 

V.

 

INTEGRATED APPLICATIONS
ENGINEERING, INC. AND DAVID HOWE, Appellees

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 04-CV-138184

 



 

M E M O R A N D U M   O P I N I O N








Appellants appeal from the trial court=s judgment
awarding appellees $9,186,835.50 in damages based on the unchallenged testimony
of appellees= expert, and certain other orders recited in the
judgment.  In two issues, appellants contend that (1) the evidence is legally
insufficient to support the judgment, and (2) the trial court rewrote portions
of the parties= settlement agreement.  We conclude that the expert
testimony on which the court relied is not supported by legally sufficient
evidence.  In addition, both parties agree that the judgment does not
accurately reflect one aspect of the parties= agreement.  As a
result, we reverse and remand.

Factual
and Procedural Background

I.        The
Factual Background

For twenty years, David Howe has been the president, a
director, and a shareholder of Integrated Applications Engineering, Inc. (AIAE@), a Houston-based
company that provides oil field equipment to customers in China.  In 1995,
Maggie Feng Hong came to Houston from China, and began working for IAE on its
Chinese equipment sales.  Several months later, Howe and Hong were married. 
Hong continued to work for IAE, eventually serving as the vice-president of the
company and obtaining fifty percent of the shares of IAE. 

Not long after the marriage, Howe and some partners began a
new company in Nigeria called IAE Nigeria.  The purpose of IAE Nigeria was to
assist Chinese oil companies with Nigerian oil contracts.  Howe spent much of
his time living in Nigeria and working on IAE Nigeria=s business. 
Eventually, Howe bought out his partners, and had all of the company=s shares
transferred to Hong.[1]


While Howe was in Nigeria, Hong and her brother, Bo Hong,
formed IAE Supply, Inc. and IAE Energy & Supplies, Inc., allegedly to
compete with IAE.  They ran these companies out of Howe=s home in Sugar
Land.  Hong contacted the buyers and vendors of IAE and diverted IAE=s business to IAE
Supply, Inc. and IAE Energy & Supplies, Inc.  Hong also deposited IAE money
into the bank account of Chinatech Services, Ltd., a Chinese company owned by
Hong=s mother and
uncle.[2]









Howe and Hong divorced in 2003, but they agreed to continue
owning their property jointly and sharing the earnings of the business
fifty-fifty.  However, in 2004, Howe discovered the competing companies.  He
suspected that profits from contracts diverted from IAE were going to Hong=s companies, while
IAE was being charged with the associated expenses.  He also suspected that
Hong used Chinatech to divert funds from IAE.

II.       The
Procedural Background

In the fall of 2004, Howe and IAE sued Hong, her brother Bo
Hong, IAE Supply, Inc. and IAE Energy & Supplies, Inc., alleging several
causes of action and seeking temporary and permanent injunctions against the
defendants.  Trial began on August 30, 2005.  At the start of the trial,
numerous exhibits were admitted without objection, including an expert report
and supplemental report prepared by IAE and Howe=s damages expert. 
Four witnessesCHowe, Hong, Bo Hong, and, by deposition, the financial
controller for IAE NigeriaCtestified during four days of trial.  On
September 7, 2005, the parties entered into a Rule 11 agreement that was read
into the record.  The Rule 11 agreement resolved most of the issues between the
parties, providing that assets would be divided and a receiver would be
appointed to collect receivables and money from the sale of certain of the
assets.  At the time of the settlement, no expert witnesses had testified
concerning damages. 








As part of the settlement agreement, Hong agreed Ato obtain all
Chinatech bank records within 20 business days.@  Once the records
were obtained, the parties agreed to make a presentation to the trial court to
determine whether any money had been diverted from IAE.  Hong would then pay
half of the diverted funds to Howe.  However, Hong did not comply with this
provision of the agreement; instead, she returned to China.  Before she left,
Hong severely damaged the Sugar Land residence awarded to Howe by destroying
the interior, spraying brown paint on the walls, removing curtains,
chandeliers, and fixtures, and spreading urine on the carpets.  Hong=s counsel moved to
withdraw.  His reasons for seeking to withdraw were Hong=s inability to
obtain Chinatech=s bank records and her allegedly late
payment of attorney=s fees.[3] 


Howe then filed a ASecond
Supplemental Petition@ alleging, among other things, breach of
the Rule 11 agreement, conversion, and claims for damages and exemplary
damages.  Howe also filed a AMotion to Enforce Rule 11 Agreement and
Motion to Enter Judgment@ with a notice of hearing set for November
29, 2005.  Hong=s counsel was still counsel of record at
the time of these filings.

At the start of the hearing, Hong=s counsel raised
the issue of his motion to withdraw.  After admonishing Hong=s counsel that he
had Aan obligation to
represent [Hong] until you are officially off the case,@ the trial court
granted the motion.[4] 


Immediately after granting Hong=s counsel=s motion to
withdraw, the trial court took up Howe=s motion to
enforce the Rule 11 agreement and the claims in his supplemental petition.  One
of the witnesses to testify was Howe=s expert, John
Madsen, a Certified Public Accountant.  Madsen testified that he was asked to
evaluate the potential for fraud and to calculate the amount of damages with
regard to IAE and the related companies.  He testified that he reviewed the
financial statements of IAE and the other companies, and all of the supporting
documents that were available.  He also had Asignificant
discussions@ with Howe regarding how the companies operated.  In
addition, Madsen testified that the information he relied upon was the type
reasonably relied upon by C.P.A.s in rendering opinions regarding financial
matters.  He also stated that his review was Avery extensive@ and estimated
that he spent Aprobably four hundred hours@ reviewing the
documents.  








Madsen testified without objection that, based on the
records and documents provided to him by the companies and Hong, the total
amount of funds diverted to Chinatech was $18,329,921.00.  He also testified
that the amount of IAE accounts receivable included in that figure was
$14,799,299.00.[5] 
He did not explain what the remaining $3,530,622.00 in damages represented.  No
contracts or other documents were offered into evidence to support these
figures.

Howe then testified concerning the breach of the Rule 11
agreement and the damage to the Sugar Land residence awarded to him in the
agreement.  Howe testified that the $18 million figure Madsen reached did not
represent all of the money that had been diverted to Chinatech, but only that
which could be determined from Athe contracts signed and the payments that
were made@ in the absence of the Chinatech records that Hong
failed to provide as agreed.  Howe added that he believed Hong had actually
diverted more than $18 million. 

Hong later secured new attorneys, and asserted in
additional briefing to the trial court that, among other things, no evidence
supported the total amount of damages testified to by Madsen.  Hong also
requested that the trial court allow the defendants to present their own
evidence at a new evidentiary hearing.  Following the entry of a judgment on
December 16, 2005, the trial court held a hearing on the issues Hong raised. 
The trial court denied most of Hong=s requests, but
ordered the amount of damages divided fifty-fifty as provided in the Rule 11
agreement and a remittitur of the punitive damages awarded against Hong.[6]

On March 24, 2006, the trial court entered an amended final
judgment awarding, among other things, actual damages of $9,186,835.50Cone-half of the
amount Madsen had testified to at the hearingCagainst Hong.  The
trial court also filed findings of fact and conclusions of law.  This appeal
followed.  

Analysis

I.        The Legal
Sufficiency of the Evidence of Damages

Hong argues the evidence is legally insufficient to support
the award of damages of $9,186,835.00 based on Madsen=s testimony,
because it was speculative, conclusory, and unsupported by any exhibits. 
Specifically, Hong challenges the following facts found by the trial court
concerning the amount of damages awarded:

The Court finds that the issues
addressed in the Court=s determination included the following: 
the amount of funds deposited into and withdrawn from the Chinatech account(s)
and wrongfully diverted by Maggie Feng Hong was the total sum of
$18,329,921.00; those funds were generated by IAE or its related companies (as
opposed to independent business activities of the owners of Chinatech Services
Limited, if any); the amount of funds, if any, used to purchase the Beijing
house; the amount of funds paid by Chinatech to Beijing Aieryi Petrotech, Ltd.,
and whether those payments were a legitimate business expense, the breach of
the Rule 11 Agreement of September 7, 2005, the damages to 518 Sugar Creek,
Sugar Land, Texas, the conversion of property, diversion of funds and
receivables, and theft of property by Maggie Feng Hong in a total sum
$21,875.00.

Hong
does not challenge the trial court=s finding of fact
that Athe testimony of
John R. Madsen was reliable, credible and worthy of belief.@

In response, Howe and IAE contend that Madsen=s expert testimony
and his reports admitted into evidence during the trial are sufficient evidence
to support the damages award, and Madsen=s analysis of IAE
and his conclusions were based on reliable methods, complete information, and
credible evidence.








A.      Standard of
Review and Applicable Law 

A trial court=s findings are
reviewed for legal and factual sufficiency of the evidence under the same
standards as are applied in reviewing evidence supporting a jury=s answer.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When reviewing the legal
sufficiency of the evidence, we review the evidence in the light most favorable
to the challenged finding and indulge very reasonable inference that would
support it.  See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005).  We credit favorable evidence if a reasonable fact finder could, and
disregard contrary evidence unless a reasonable fact finder could not.  Id.
at 827.  The evidence is legally sufficient if it would enable a reasonable and
fair-minded person to reach the verdict under review.  Id.  There is Ano evidence@ or legally
insufficient evidence when (a) there is a complete absence of evidence of a
vital fact; (b) the court is barred by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence conclusively establishes the opposite of the vital fact.  See id. at
810; Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).

When a challenge to an expert=s reliability
requires the court to evaluate the underlying methodology, technique, or
foundational data the expert used, an objection must be timely made so that the
trial court has the opportunity to conduct this analysis.  See Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 233 (Tex.
2004).  However, when the challenge is that the expert testimony is speculative
or conclusory on its face, then a party may challenge the legal sufficiency of
the evidence even in the absence of any objection to its admissibility.  Id. 
Thus, because Hong did not object to the reliability of Madsen=s testimony in the
trial court, our review of the evidence is limited to the face of the record.  See
Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 911 (Tex. 2004); Coastal
Transp. Co., 136 S.W.3d at 233.








The Texas Supreme Court has held that conclusory or
speculative opinion testimony is Aincompetent
evidence@ and cannot
support a judgment.  Coastal Transp. Co., 136 S.W.3d at 232.  To avoid
being considered conclusory and speculative, the opinion must have a reasoned
basis that the expert is qualified to state, based on knowledge, skill,
experience, training, or education.  Burrow v. Arce, 997 S.W.2d 229, 236
(Tex. 1999).  An expert opinion is conclusory when it offers an opinion with no
factual substantiation.  Sparks v. Booth, 232 S.W.3d 853, 863 (Tex. App.CDallas 2007, no
pet.); United Servs. Auto. Ass=n v. Croft, 175 S.W.3d 457,
463 (Tex. App.CDallas 2005, no pet.).  The expert must explain how he
reached his conclusion.  Sparks, 232 S.W.3d at 863; Croft, 175
S.W.3d at 464.  

As we explain in detail, we conclude that Madsen=s opinion
testimony was conclusory because his opinions were not supported by the
evidence.

B.      The
Evidence Does No Support the Damages Award

As noted above, at the November 29 hearing, Madsen set
forth two damage calculations.  The first was the total damages amount of
$18,329,921.00, and the second was for diverted accounts receivable of
$14,799,299.00, which was included in the total.  However, Madsen provided no
basis for the remaining $3,530,622.00 in damages.  And, although Madsen
testified that he conducted an extensive review of many documents in reaching
his conclusions, no exhibits were introduced during his testimony to support
the damages calculations he reached.  For example, Madsen did not identify any
specific contract that was wrongfully diverted from IAE, he provided no
evidence that any specific receivables of IAE were diverted, and he failed to
provide any evidence that any money was received and deposited by Chinatech.








Howe and IAE respond that Madsen=s testimony is
supported by his original and supplemental expert reports, which were admitted
without objection during the trial as Plaintiffs= Exhibits 51 and
52, respectively.[7] 
However, the figures contained in these reports do not correspond to Madsen=s testimony, and
the documents or data Madsen relies upon cannot be ascertained with reasonable
certainty from the reports.

To illustrate, in Madsen=s supplemental
expert report, Exhibit 52, he states the following:

With regard to Chinatech, for which all requested information has not
been provided, we have noted the following:

$                  
The $880,647 of
funds has been inappropriately diverted as described in item #1 above.

$                  
Receivables of
$4,125,000 are due to Chinatech (see Enclosure 2, attachment 3 and Enclosure
9).

$                  
Amounts known
to have been received and deposited by Chinatech total $3,612,500 (see
Enclosure 2, attachment 3 and Enclosure 9).

$                  
Amounts earned
from the drilling rigs agreements with CNPC/PDVSA/GWDC/Petrolog total
$9,711,774 (see Enclosure 2, page 6 and Enclosure 9).

To summarize Chinatech, there are
known funds that belong to IAE, Inc. totaling $18,329,921 in possession by
Chinatech.  It is likely that the amount would be greater if the defendants
provided the accounting records of Chinatech.  However, the defendants have not
provided complete and comprehensive accounting records despite a court order to
do so.  If complete accounting records were provided it could be determined if
Chinatech is in possession of IAE, Inc. funds in excess of the $18,329,921.








The supporting information Madsen references in parentheses
either fails to sufficiently identify the origin of the data used in Madsen=s calculations or
fails to explain the facts Madsen relied upon in reaching his conclusions.  For
example, to support the first bullet point, Madsen refers to Aitem #1 above.@  This item lists
five transfers of money to Chinatech out of either IAE or IAE Supply, Inc. on
specific dates in 2002 and 2004.  However, no supporting documentation for
these transfers is identified or provided.[8] 
Similarly, for the remaining bullet points, Madsen references AEnclosure 2,
Attachment #3,@ AEnclosure 2, page 6,@and AEnclosure 9.@  Enclosure 2,
Attachment #3, found in Madsen=s original expert report, purports to list
receivables for four contracts based on Acontract values
and IAE commission agreements@ and receipts for three contracts Abelieved to have
been received according to comments from customer representatives and letter
dated February 23, 2005.@[9]  The significance
of the reference to page 6 of Enclosure 2 is unclear, although it appears to describe
a dispute between the parties concerning the value of the referenced contract
and the amount of commission due.  Enclosure 9 simply refers back to the
information or data Afrom Enclosure 2, Attachment #3,@ and additionally
lists AIAE books and
records,@ and the disputed
contract information as sources.  These sources provide only cursory
information or data concerning the basis for the amounts identified and none of
the amounts correspond to the figures Madsen testified to at the hearing. 








Howe and IAE also point to Enclosure 10 of Madsen=s supplemental
report as an itemized list of damages.  However, Enclosure 10 purports to
calculate damages based on values assigned to Ajoint assets,@ including
accounts, condominiums, and vehicles unrelated to the issue on appeal.  The
list of assets does include Chinatech and assigns a value of $18,329,921 for
this asset.  However, this value merely corresponds to the total damages Madsen
calculated in his report; it does nothing to shed light on the data or other
information Madsen relied upon in reaching the conclusions to which he
testified to at the hearing.  Thus, Madsen=s reports provide
no evidence to support his conclusions.  

Howe and IAE also identify forty-four of their other
exhibits admitted into evidence and, in a conclusory manner, assert that these
exhibits support Madsen=s damage calculations.  However, Madsen
does not refer to them in his testimony, so the record does not reflect whether
he reviewed or relied on any of these documents, or, if he did rely on them,
how they related to his calculations.  At most, Madsen testified that he spent
a lot of time reviewing a lot of documents.  Therefore, it would be speculative
to conclude that his review included these exhibits or that these exhibits in
fact supported his calculations.

Next, Howe and IAE assert that A[i]t was apparent
that Mr. Madsen was certain about the $18,329,921 due from Chinatech, but [he]
speculated that the amounts could exceed $33 million.@  Therefore,
according to Howe and IAE, the trial court Aobviously based
its judgment on the amount certain@ and so its
judgment must be affirmed.  However, without documentation to support it,
Madsen=s subjective
certainty is not a legally sufficient foundation for his conclusions.  See
Havner, 953 S.W.2d at 712 (AWhen the expert >br[ings] to court
little more than his credentials and a subjective opinion,= this is not
evidence that would support a judgment.@) (quoting Viterbo
v. Dow Chem. Co., 826 F.2d 420, 421 (5th Cir. 1987)). 








Therefore, because Madsen=s testimony
concerning damages relating to Chinatech did not explain how he reached his
conclusions, is inconsistent with the calculations and conclusions presented in
his expert reports, and lacks factual substantiation in the record, we hold
that this evidence is legally insufficient to support the award of
$9,186,835.50 in the trial court=s judgment.  See
Coastal Transp. Co., 136 S.W.3d at 232B33 (holding that
expert=s testimony
concerning conscious indifference prong of gross negligence claim was too
conclusory to defeat a motion for directed verdict); James L. Gang &
Assocs., Inc. v. Abbott Labs., Inc., 198 S.W.3d 434, 439 (Tex. App.CDallas 2006, no
pet.) (holding expert=s affidavit testimony was conclusory when
expert provided no facts or figures to support approximation of expenses,
attached exhibit contained no fact or figures related to purchase order at
issue, and figures did not match damage estimates for alleged breach of
purchase order as testified to by expert); Lefton v. Griffith, 136
S.W.3d 271, 276B77 (Tex. App.CSan Antonio 2004,
no pet.) (holding that plaintiff=s testimony
describing alleged losses from sale of her inventory and home was conclusory
when it failed to provide a factual basis to support her conclusions and so was
legally insufficient to support damages award). 

Having concluded that Madsen=s conclusions are
not supported by legally sufficient evidence, we look to the rest of the record
to determine whether other evidence supports the damages awarded in the
judgment.  It does not.

At trial, Howe testified that Hong was a signatory on
Chinatech=s bank account and that she told him that there was
over $5 million dollars in the account in May of 2003.  Howe also testified
that he believed Hong had diverted much more than $18 million to Chinatech. 
Although this testimony may be relevant to Howe and IAE=s claims, it does
not provide any factual support for the amount of damages awarded, which was
far in excess of $5 million.

We hold that, based on the record before us, the evidence
is legally insufficient to support the $9,186,835.50 in damages awarded to
appellees, and we therefore sustain appellants= first issue. 
Because the parties= Rule 11 agreement contemplated that any
damages relating to Chinatech would be determined by the trial court, and
appellants have requested that the case be reversed and remanded for a new
trial on these damages, we agree that reversal and remand, rather than reversal
and rendition, is appropriate in this case. 

II.       Conflict
Between the Rule 11 Agreement and the Judgment








In their second issue, appellants contend that, in its
judgment, the trial court Arewrote@ portions of the
Rule 11 agreement.  They complain that certain provisions of the judgment
conflict with the parties= agreement or were not contemplated in
it.  Although Howe and IAE dispute this claim generally, they do concede that,
with regard to the issue of taxes, the trial court=s intent is not
reflected in the judgment, and have asked that this Court reform the judgment
accordingly.  However, because we are reversing and remanding for a new trial
as discussed above, we conclude that the better solution is for the trial court
to correct any error in the judgment at the time of a new trial.

We therefore sustain appellants= second issue.

Conclusion

Accordingly, we reverse and remand for further proceedings
consistent with this opinion. 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Memorandum Opinion filed March 11, 2008.

Panel consists of
Justices Fowler, Seymore, and Guzman.









[1]  According to Hong, ten percent of IAE Nigeria was
given to her brother, Kevin.





[2]  Chinatech was set up so that Hong=s mother and uncle were named Chinatech=s directors, and neither Hong nor
Howe owned any shares in the company.  The company was created to proved an
offshore bank account to shelter income from the foreign projects from being
taxed in the United States, and Howe knew that IAE money was deposited in Chinatech=s bank account.  However, Howe
testified that Hong was the sole signatory on Chinatech=s bank account, and that in 2003,
she told him there was over $5 million in Chinatech=s account. 





[3]  Attached to the motion was correspondence from
Chinatech and its representatives, indicating that Chinatech refused to provide
the records to Hong because she was neither a shareholder nor director of the
company and was not otherwise entitled to demand them.





[4]  Although Hong apparently requested that another lawyer represent her,
and this lawyer was also present at the hearing, he had not yet agreed to
represent Hong.  





[5]  The trial court then asked Bo Hong if he had any
questions of the witness.  Bo Hong, who had already been called to testify by
Howe=s counsel at the hearing and did so without
representation, stated that he did not have any questions.





[6]  The trial court=s
original judgment awarded punitive damages of $1 million against Hong in
addition to actual damages of $18,351,796.00.  However, the amended judgment
included a separate award of $21,875.00 as damages arising from Hong=s actions at the Sugar Land residence and exemplary
damages of two times that amount, or $43,750.00.





[7]  Appellants take the position that the trial court
should not have considered these exhibits, which were admitted during the trial
but not at the November 29 hearing.  However, they cite no authority to support
this position, and we are aware of none.  Further, it is evident that the trial
judge, who presided over both the trial and the hearing, considered all the
evidence before it, as stated in the following unchallenged fact finding:  AThe Court finds that upon consideration of the
testimony and exhibits admitted during the trial and in the hearing on November
29, 2005, the Court should order Maggie Feng Hong to pay to David Howe and
IAE, Inc. Damages in the sum of Nine Million One Hundred Eighty Six Thousand
Eight Hundred Thirty Five and 50/100 ($9,186,835.50) (emphasis added).





[8]  We note that Enclosure 9 of Exhibit 52 also lists
these transfers, and identifies the source of the data merely as AIAE books and records.@





[9]  Concerning the letter, Madsen states in a footnote
that Hong Aacknowledges only a portion of Shell East and Shell
West funds have been deposited.@  Madsen
further states AHowever, plaintiff believe (sic) that the clients have
paid these amounts.  Where have the funds gone?  Plaintiff believes this is an
obvious attempt by the defendant to misappropriate funds.@  These comments concerning the plaintiff=s Abelief@ does not constitute the type of objective facts or
data required to support an expert=s
damages calculation.  See A.B.F. Freight Sys., Inc., v. Austrian Imp. Serv.,
Inc., 798 S.W.2d 606, 615 (Tex. App.CDallas
1990, writ denied) (AThere can be no recovery for damages which are
speculative or conjectural.  The damages must be ascertainable in some manner
other than by mere speculation or conjecture, and by reference to some fairly
definite standard, established experience, or direct inference from known
facts.@).