REGENCY ADVANTAGE LIMITED
PARTNERSHIP, Ronald Berman,
and Marc Eller, Petitioners,

v.

The BINGO IDEA–WATAUGA, INC. and
Steven S. Bailey, Respondents.

No. 95–0481.

Supreme Court of Texas.

July 12, 1996.

Rehearing Overruled Jan. 31, 1997.

Francis Y. Pan, Austin, for Petitioner.

Phil King, Weatherford, David F. Bragg, Joseph G. Chumlea, Dallas, for Respondent.

**PER CURIAM.**

This case presents the question of an assignee's liability for its predecessor-in-interest's alleged breach of a lease and a contract to pay a real estate commission. Because any breach of the lease occurred before the original lessor transferred its interest in the lease to the assignee and the lease obligation was not capable of successive independent breaches, we reverse the judgment of the court of appeals and render judgment for the assignee.

The Bingo Idea–Watauga, Inc. leased space in a shopping center from Texas American Bank (TAB). Bingo and TAB executed

an amendment to the lease on June 1, 1989, that provided that Bingo had sixty days to obtain all necessary approvals to operate a bingo facility on the premises or the lease would terminate. If Bingo obtained all necessary approvals, TAB then had forty-five days to complete the build out of the space as required by the lease.[1]

On June 10, 1989, the Comptroller issued Bingo a sixty-day "Temporary Authorization To Lease Bingo Premises" that expired on August 9, 1989. Bingo obtained two more temporary authorizations, but its application for a license was eventually denied on September 11, 1989. Bingo appealed this denial and on November 1, 1995, the Comptroller's office withdrew its objection to Bingo's application. Bingo, however, did not obtain an annual license. The lease space was never built out and Bingo never occupied it.

Regency Advantage Limited Partnership and its general partners, Ronald Berman and Marc Eller (collectively, "Regency"), obtained the shopping center by special warranty deed effective November 10, 1989. In a separate instrument, TAB conveyed all leases covering the shopping center to Regency in an assignment in which Regency agreed to perform all terms and covenants of the leases after, but not prior to, November 10, 1989.[2] Regency was aware of TAB's potential dispute with Bingo, however, and negotiated a $100,000 reduction in the purchase price of the shopping center in return for indemnifying TAB for any liabilities TAB incurred in connection with the Bingo lease.

Regency sued Bingo, requesting a declaratory judgment that the lease between TAB and Bingo had terminated on its terms. Alternatively, Regency claimed that Bingo had

1. The relevant portion of the lease states:
   Tenant has sixty (60) days from the date of final execution of this lease to secure and deliver to Landlord (in writing) all necessary approvals from the Texas Comptrollers Office and any other licensing required to legally operate a bingo facility. Failure of Tenant to deliver the above approvals within said sixty (60) days shall render this lease agreement null and void. Landlord shall have forty five (45) days from receipt of all above approvals to fulfill the Landlords [sic] responsibility for the work specified in Exhibit "D–1".

2. The assignment specifically provides:
   By accepting this Assignment of Tenant Leases and by its execution hereof, Assignee hereby assumes and agrees to perform all of the terms, covenants and conditions of the leases on the part of the lessor therein required to be performed from and after the effective date hereof, but not prior thereto....
   The effective date of the assignment was November 10, 1989.

breached the lease by failing to pay rent. Bingo counterclaimed, alleging that Regency breached the lease by failing to build out the leased space. Both parties moved for summary judgment on the issue of liability under the lease, and the trial court granted partial summary judgment for Bingo and against Regency. After a nonjury trial, the trial court entered judgment jointly and severally against Regency for over $1,057,064 in damages, including prejudgment interest and attorneys' fees. The trial court further held that Regency was liable to Stephen Bailey, Bingo's real estate broker, for a broker's commission, prejudgment interest, and attorneys' fees totaling $63,873.15. The court of appeals reversed the trial court's award in favor of Bailey and rendered judgment that Bailey take nothing. It also reversed the award of attorneys' fees against Regency and prejudgment interest on those fees, but otherwise affirmed the judgment against Regency. All parties—Regency, Bingo, and Bailey—filed applications for writ of error in this Court.

■ The issue here is straightforward. Even assuming that TAB breached the lease in failing to build out the leased space within forty-five days after Bingo obtained a temporary authorization to sublet the premises for bingo games and assuming that the obligation to build out the space ran with the lease, Regency did not breach the lease because the obligation to build out the premises accrued before the lease was assigned to Regency.

■ The Restatement of Property (Second) succinctly states the controlling principle: "The transferee [of an interest in leased property] will not be liable for any breach of the promise which occurred before the transfer to him." RESTATEMENT (SECOND) OF PROPERTY § 16.1(3) (1977). As the writers of the Restatement explain,

A transferee is liable on a promise that runs with the transferred interest only to the extent of a breach of the promise that occurs while the transferee is in privity of estate with the person entitled to enforce the promise. If the promise is capable of being broken only once and was broken before the transfer, the transferee does not incur any personal liability with respect to it. If the promise is capable of successive independent breaches, the breaches that occur before the transfer cannot subject the transferee to any personal liability.

*Id.* § 16.1 cmt. h.

The court of appeals recognized this well-established principle, stating that "a transferee of a landlord's reversion is not liable for a breach of a landlord's covenant that occurred before the transfer." 928 S.W.2d at 59 (citing 3 FRIEDMAN, FRIEDMAN ON LEASES § 36.2 (3d ed.1990)). However, the court of appeals then concluded that failure to build out the space at issue was a continuing breach. The court of appeals held that both "TAB and Regency breached the lease covenant that required the build-out of the commercial space." 928 S.W.2d at 59.

■ We disagree. Under the lease, the landlord's duty to build out the leased premises was a one-time obligation, accruing forty-five days from the receipt of the approvals necessary for the lessee to operate a bingo facility. The Comptroller issued a temporary authorization to Bingo on June 10, 1989, and Bailey notified TAB of that approval on June 27, 1989. Bingo held a permit authorizing it to lease a bingo facility through September 11, 1989. Assuming that the temporary authorization triggered the landlord's obligation to build out, as Bingo argues, TAB breached the lease by failing to build out the space by August 11, 1989 (forty-five days after TAB received notice that Bingo was authorized by the Comptroller to lease the premises for bingo games). Regency did not become the owner of the shopping center or assume the lease until November 10, 1989, after TAB allegedly breached its obligation to build out the premises. Regency therefore is not liable for any breach by TAB of the lease.

Our conclusion does not mean that Bingo was without any rights against Regency. As comment h to section 16.1 of the Restatement further explains, in situations in which the original lessor has breached a lease prior to transferring the lease to its assignee,

the other party to the lease may be entitled to terminate the lease for the past breaches and if so the transferee's position under the transfer may be affected accordingly.

RESTATEMENT (SECOND) OF PROPERTY § 16.1 cmt. h (1977). In other words, while Regency was not liable to Bingo for TAB's breach, Bingo may have had the right to terminate or a defense against payment of rent to Regency.

■■ Bingo argues that because Regency's second amended petition contains the statement that "Regency tendered full performance of its obligations under the Lease, as amended, including leasehold improvements and equipment," Regency has judicially admitted that it was obligated to build out the space and is estopped from arguing differently. Bingo also argues that because Regency originally filed suit to recover rent from Bingo, it impliedly assumed TAB's obligation to build out the lease. We are unpersuaded by these arguments. A judicial admission must be a clear, deliberate, and unequivocal statement. *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex.1991); *Griffin v. Superior Ins. Co.,* 161 Tex. 195, 338 S.W.2d 415, 419 (1960). Regency's second amended petition, far from being a clear admission of an obligation to assume TAB's duty to build out the space in question, actually requests a declaration from the trial court that the lease in question is void. While the petition requests breach of contract damages in the alternative, our rules expressly permit parties to proceed on alternative theories of relief. TEX.R. CIV. P. 48. Moreover, Regency's request for breach of contract damages is not necessarily inconsistent with the position that Regency did not have a duty to build out the leased space, as we have discussed above.

We hold as a matter of law that Regency is not liable for a breach of the lease that occurred before the lease was assigned to Regency. Because we render judgment for Regency, we do not reach its points of error regarding the sufficiency of the evidence to support the award of lost profits. Moreover, as we have held that Regency did not breach

the lease, Bingo's claim that Regency is liable for its attorneys' fees has no merit.

■■ We next consider Regency's liability to Stephen Bailey for a commission on the lease. Bailey points to the language in the commission agreement that states that the agreement applies to the assignees of the original parties. He argues that Regency assumed liability for the commission on the lease when TAB assigned Regency the leases in the shopping center. Regency argues that it did not expressly agree to an assignment of the commission agreement, and points out that the release and indemnity agreement that it executed in favor of TAB in conjunction with the assignment of the shopping center leases *expressly excepts any liability for lease commissions* on the lease at issue.

We agree with Regency and affirm the court of appeals. On these facts, for Regency to be liable on the commission agreement, it must have expressly assumed such liability. *See Lone Star Gas Co. v. Mexia Oil & Gas, Inc.,* 833 S.W.2d 199, 201 (Tex.App.—Dallas 1992, no writ)(holding that no assumption of liability for the prior debt of the assignor occurs absent express promissory words of assumption on the part of the assignee); *Hall v. Arnett,* 31 S.W.2d 506, 508 (Tex.Civ. App.—Amarillo 1929, writ dism'd); *Potts v. Burkett,* 278 S.W. 471, 473 (Tex.Civ.App.—Eastland 1926, no writ)(holding that the assignee of a contract is not bound for the performance of the contract's obligations unless they are expressly assumed by the assignee).

\*　\*　\*　\*　\*　\*

Pursuant to Texas Rule of Appellate Procedure 170, without hearing oral argument, we grant all the parties' applications for writ of error and reverse the judgment of the court of appeals in favor of Bingo and render judgment that Bingo take nothing on its claims against Regency, Berman, and Eller. We affirm the judgment of the court of appeals that Bailey take nothing on his claims against Regency.