**Opinion issued May 9, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-11-00326-CV

_____

**STEVE STEPHENS D/B/A AND A/K/A TERRA-TEXAS COMPANY
AND JOHN RUNION, SR., Appellants**

**V.**

**PRECISION DRILLING OILFIELD SERVICES CORPORATION, Appellee**

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2009-30296-A**

---

### MEMORANDUM OPINION

This case involves claims for conversion of oil field equipment. Appellants

Steve Stephens, doing business as and also known as Terra-Texas Company, and

John Runion, Sr. filed a suit alleging conversion by appellee Precision Drilling

Oilfield Services Corporation and other defendants who are not parties to this appeal. The trial court granted Precision Drilling's two motions for summary judgment on the claims asserted by Stephens and Runion. These claims were severed into a separate suit, thereby transforming the two summary-judgment orders into a final judgment. Stephens and Runion appeal from the judgments that they take nothing. We affirm.

## Background

Stephens owned an Emsco C2, Type 3 draw works, which is a kind of oilfield equipment resembling a winch. He alleges that he entered into an oral contract of bailment in Houston with Garrick Industries, Inc. to repair and refurbish his equipment. The equipment was delivered to a Garrick facility in Louisiana, and Stephens occasionally traveled there to check on the progress of the work.

Approximately nine months later, Stephens came to believe that Garrick had sold his equipment. He later determined that the buyer was Rig Fabricators & Repair, Inc., whose president was Keith Richardson. Stephens allegedly tried to contact Richardson and the owners of Garrick over the course of several months, but his phone calls were not returned.

Another company, Grey Wolf, Inc., delivered its own draw works to Rig Fabricators for repair, refurbishment, and upgrades. Grey Wolf either merged with

or was acquired by Precision Drilling before this suit was filed. A Grey Wolf "Material Transfer Record" reflects that an "Emsco C-2 Drawworks" was "rebuilt by Rig Fab" and delivered back to Grey Wolf. By the time that Grey Wolf received its equipment back from Rig Fabricators, Stephens had learned of the allegedly unauthorized sale of his equipment by Garrick to Rig Fabricators.

Stephens believed that Rig Fabricators had delivered his equipment to Grey Wolf. Runion, a business associate of Stephens, sent an email message to Grey Wolf to inform it of the allegations against Garrick. In that email message, Runion stated his belief that Grey Wolf "had no specific knowledge of the above scenario of lies, deception, theft and collusion" and indicated that he was contacting the company "as a courtesy and a heads-up of advising you'all of what is coming next."

Stephens ultimately sued Garrick and its owners, Rig Fabricators, and Keith Richardson and some of his businesses, including Precision Drilling as the successor-in-interest to Grey Wolf. With respect to the claims against Precision Drilling, Stephens alleged:

> Plaintiff brings this action for Conversion and for the return of his property held by this Defendant. In this regard, Plaintiff says that since Plaintiff's property was initially stolen by the Garrick Defendants, no good title could pass to any purchaser from Defendant, or any subsequent purchaser, including the Grey Wolf Defendant [i.e., Precision Drilling]. This Defendant therefore presently possesses

property which belongs to Plaintiff and which it refuses to return, rendering such Defendant Liable for Conversion.

Pleading further, Plaintiff says the Grey Wolf Defendant holds Plaintiff's property adversely and refuses to return the property. Plaintiff therefore brings this action to recover the draw works in question from the Defendant, pursuant to common-law principals [*sic*] governing such matters and pursuant to Art. 47.01, *Tex Code Crim P.*, *et seq*.

Stephens also asserted claims for conversion against the other defendants, and with respect to those parties he also alleged civil conspiracy and violation of the Texas Theft Liability Act. Precision Drilling answered with a general denial.

Stephens moved for the restoration of his equipment pursuant to Chapter 47 of the Code of Criminal Procedure. *See generally* TEX. CODE CRIM. PROC. arts. 47.01–.12 (West Supp. 2012) (providing procedures for the restoration of stolen property to its true owner). After a hearing, the trial court signed an order denying the motion.

Precision Drilling subsequently filed a motion for summary judgment on both traditional and no-evidence grounds. It construed the petition as alleging that Rig Fabricators had incorporated parts of Stephens's equipment into Precision Drilling's equipment during repairs and refurbishments. Precision Drilling argued that Stephens had no standing to sue because he had assigned his entire ownership interest in the equipment to Runion before filing suit. In the no-evidence section of its motion, Precision Drilling argued that Stephens had no evidence for any of the

4

elements of conversion. It further argued that Stephens had no evidence for several elements of theft.

Stephens filed a response, including legal arguments to support his own standing. To show that he had evidence on the elements of conversion, he submitted a sworn affidavit with several attached exhibits. Stephens did not, however, address Precision Drilling's contention that he had no evidence to support the contested elements of theft.

After Stephens filed his response and before the trial court ruled on the motion for summary judgment, an amended petition was filed in which Runion joined all causes of action as Stephens's co-plaintiff. The amended petition substantially repeated Stephens's prior allegations and claims against the defendants, including Precision Drilling.

The trial court granted summary judgment on Precision Drilling's motion and ordered that Stephens take nothing against the company. Subsequently, Precision Drilling filed another motion for summary judgment challenging Runion's suit, in which it reiterated substantially the same arguments made against Stephens's suit, though it did not challenge Runion's standing. Runion filed substantially the same response that Stephens had previously filed. As it had with respect to Stephens, the trial court granted summary judgment and ordered that

5

Runion take nothing against Precision Drilling. Stephens and Runion appeal from the final judgments that they take nothing on their claims.

**Analysis**

We review de novo a trial court's decision to grant a motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review the summary-judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Finger v. Ray*, 326 S.W.3d 285, 289–90 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i). A no-evidence summary judgment will be

sustained on appeal when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the nonmovant to prove a vital fact, (3) the nonmovant offers no more than a scintilla of evidence to prove a vital fact, or (4) the nonmovant's evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Ridgway*, 135 S.W.3d at 601.

## I.  Stephens's standing

In its motion for summary judgment, Precision Drilling argued that Stephens lacked standing "for the simple reason that he was not the owner of the Draw Works at the time suit was filed," and therefore he had "no justiciable interest." As an appellant, Stephens must negate all grounds that were raised in Precision Drilling's summary-judgment motion against him. *See Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)). When, as here, the trial court does not specify the basis for its summary judgment,

7

"the appellant must show it is error to base it on any ground asserted in the motion." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the appellant fails to challenge on appeal a ground asserted in the motion, we will affirm the summary judgment with respect to the relevant claim, regardless of whether summary judgment could have been properly rendered on that ground. *Ellis*, 68 S.W.3d at 898.

Despite having responded to the standing challenge in the trial court, Stephens does not address on appeal Precision Drilling's summary-judgment argument that he lacked standing. Because Stephens has failed to address on appeal a ground that Precision Drilling raised in the summary-judgment motion, we affirm the judgment against him. *See id*.

## II. Conversion

One of the elements of conversion is that the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner. *NXCESS Motor Cars, Inc. v. JPMorgan Chase Bank, N.A.*, 317 S.W.3d 462, 470 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). When Precision Drilling challenged this element in its no-evidence motion for summary judgment, it became Runion's burden to "produce[] summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). Runion was not required to marshal his

8

proof, but he needed to "point out evidence that raises a fact issue on the challenged elements." *Id.* cmt. 1997. The nonmovant must expressly and specifically identify the supporting evidence on file that it wants the trial court to consider in its response to a summary judgment motion. *See, e.g.*, *Speck v. First Evangelical Lutheran Church of Houston*, 235 S.W.3d 811, 816 (Tex. App.— Houston [1st Dist.] 2007, no pet.).

The summary-judgment motion asserted that there was no evidence of several elements of Runion's conversion claim, including the element that "Precision wrongfully took dominion and control over the property in question." In response, Runion stated:

> Plaintiffs incorporate by reference all the foregoing pleadings, arguments and evidence, for all purposes, as if repeated verbatim in its entirety, here: . . . As reflected above, the draw-works was stolen and no subsequent purchaser of it could obtain any title to the draw-works (*See*, Affidavit of Steve Stephens, attached).

With respect to the possession of his equipment, Stephens averred as follows in his affidavit:

> 9. Sometime around September 2008, I learned for the first time my Draw-works had been sold by GARRICK to a company called Fire Fox. I did not know of this sale, nor did I approve of such sale, either before or after it occurred, nor did I receive any of the sale proceeds. I later learned that my Draw-works had been sold on April 8, 2008, to a company called Red Fox, located near Lafayette, LA. I learned that the sale price was $225,000.00 [MSJ Affidavits, *Exhibits Nos. 6* and *6a*];

10.    On January 14, 2009, when I learned that Red Fox had my Draw-works, I sent a letter to Keith Richardson by Fax informing him that the draw-works was stolen and demanding its immediate return. I later learned that Keith Richardson was the owner of both the Red Fox company and the company which actually purchased the draw-works, Rig Fabricators & Repair, Inc. ["RIG FAB"] [MSJ Affidavit *Exhibit No. 4*];

11.    *We learned that two (2) days after we sent the letter <u>telling RIG FAB that GARRICK had stolen the Draw-Works</u>* [Exhibit No. 11, above], **on January 16, 2009**], RIG FAB delivered my draw-works to GREY WOLF drilling [MSJ Affidavit *Exhibit No. 5*] for $780,579.29. [MSJ Affidavit *Exhibit No. 7*] I did not know of this sale nor did I approve of such sale either before or after it occurred, nor did I receive any of the sale proceeds;

12.    On April 30, 2009, after learning that GREY WOLF was now in possession of our C-2 Draw-works, we e-mailed GREY WOLF (Terri Lejeune) **all** of this information showing that Terra-Texas is the rightful owner of the C-2 Draw-works [MSJ Affidavit *Exhibit 8*], and asking GREY WOLF to investigate and work with us to make us whole. Neither Garrick Industries, Inc., nor Rig Fabricators & Repair, Inc., nor Grey Wolf has returned my draw-works or paid me its value.

(All emphasis in original.)  The exhibits referenced in the foregoing excerpt and attached to Stephens's affidavit are:

- Exhibit 4, a letter from Stephens to Richardson demanding return of the draw works;
- Exhibit 5, a Grey Wolf "Material Transfer Record" reflecting delivery of an "Emsco C-2 Drawworks" that was "rebuilt by Rig Fab";
- Exhibit 6, a Rig Fabricators check payable to Garrick Industries in the amount of $225,000.00;
- Exhibit 6a, a Garrick Industries invoice addressed to Rig Fabricators for a "Continental Emsco C2 Drawworks" at the unit price of $225,000.00;
- Exhibit 7, a November 10, 2008 Rig Fabricators invoice billed to Grey Wolf for "REBUILD CONT EMSCO C2 DRAWWORKS"; and
- Exhibit 8, text from an email message from Runion apprising Grey Wolf of the allegations and asking that it "do its own research into this matter."

10

Runion's written response to Precision Drilling's no-evidence motion did not expressly point to any other specific evidence.

In his appellate brief, Runion contends that Stephens's affidavit provided proof on every contested element of conversion. In response, Precision Drilling argues that Runion failed to offer evidence that the draw works delivered by Stephens to Garrick and then allegedly sold to Rig Fabricators is the same draw works that was ultimately delivered to Grey Wolf after it had engaged Rig Fabricators to repair its own draw works. Precision Drilling alleged that Stephens lacked any personal knowledge of the transfers involving Rig Fabricators or of how the repairs were performed on the Grey Wolf draw works. It thus characterizes Stephens's affidavit as "rank speculation" to the extent he claimed that "Rig Fab delivered my draw-works to Grey Wolf Drilling for $780,579.29," relying solely on two exhibits: the Grey Wolf "Material Transfer Record" and the Rig Fabricators invoice dated November 10, 2008 (exhibits 5 and 7, referenced in paragraph 11 of the Stephens affidavit). Precision Drilling maintains that the referenced exhibits show only that its own draw works equipment was rebuilt, not that it is in possession of the equipment allegedly stolen from Stephens or any parts thereof.

In his reply brief, Runion reprints excerpts of Stephens's affidavit to show that Precision Drilling exercised control over the allegedly misappropriated

equipment. He argues that the affidavit is competent summary-judgment evidence because it recites at the beginning that it is based on Stephens's "personal knowledge of all the facts stated herein." Runion also argues that an objection that the affiant lacks personal knowledge is an objection to the form rather than the substance of the affidavit, and because Precision Drilling did not object to the affidavit in the trial court it waived review of any such defect.

Runion's reply brief additionally points out that Precision Drilling submitted with its summary-judgment motions a transcript of Runion's testimony at the hearing on Stephens's Chapter 47 motion for restoration. In one part of the transcript, the following line of testimony appears:

Q.      [W]here is the draw works the last time you saw it?

A.      As of today, I don't know. But at the day we inspected it in September 2009, it was s[i]tting at Grey [W]olf Precision Drilling's yard in Eunice, Louisiana.

. . . .

Q.      . . . Is it your contention that the draw works you saw in Grey [W]olf's yard is the same exact draw works that Mr. Stephens purchased in 2006?

A.      With minor modifications, yes.

Runion argues that this part of Precision Drilling's summary-judgment evidence was sufficient to establish the challenged element of the company's possession and control of the equipment. He alternatively argues that Precision Drilling judicially

12

admitted, both during the proceedings on the motion for restoration and in the motions for summary judgment, that it had possession of the equipment.

We will separately consider the sufficiency of each of Runion's arguments that he satisfied his burden to avoid a no-evidence summary judgment on the conversion claim due to the lack of evidence that Precision Drilling wrongfully took dominion and control over Stephens's draw works.

## A. Runion's testimony

In Runion's response to the motion for summary judgment, he stated that he "incorporate[d] by reference all the foregoing pleadings, arguments and evidence, for all purposes, as if repeated verbatim in its entirety." This statement may have been intended to refer to Runion's testimony at the hearing on the motion for restoration in which he testified to having seen Stephens's equipment in Grey Wolf's yard. However, this general reference in the summary-judgment response was ineffective to point out any particular evidence for the purpose of responding to a no-evidence summary-judgment motion. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989) (holding that summary-judgment motion stating that movant relied upon "the depositions and exhibits on file" was insufficient to direct trial court to evidence); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) (observing that nonmovant did not cite, quote, or otherwise point out testimony creating fact issue and that "trial court

13

was not required to search the record for evidence raising a material fact issue without more specific guidance"). There were over 200 pages attached to Precision Drilling's motion and Runion's response, and this page count does not account for the fact that many of those pages are condensed transcripts with four pages of testimony on each condensed page. Without express and specific reference to the evidence substantiating the elements of his conversion cause of action, the trial court was not required to sift through these pages or other filings to find evidence supporting Runion's position. *See Speck*, 235 S.W.3d at 816 (holding that party failed to produce competent summary-judgment evidence when it attached affidavits to pleadings but party did not refer to them in summary-judgment responses); *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding that trial court did not abuse discretion in refusing to consider 500-page deposition testimony attached to summary-judgment response when nonmovant did not direct attention to portions thereof). Accordingly, we hold that Runion did not meet his burden to point out the part of his own testimony in which he testified that he saw the equipment in Grey Wolf's yard. *See* Tex. R. Civ. P. 166a(i) & cmt. 1997.

## B. Stephens's affidavit

Although Runion's general reference to the evidence was insufficient to invoke any particular evidence for summary-judgment purposes, his express

reference to Stephens's affidavit, which is only three pages in length, was sufficient to point out that piece of evidence. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207–08 (Tex. 2002) (holding that summary-judgment specifying evidence in the record, despite failing to connect each referenced fact to the contested elements, "met the minimum requirements of Rule 166a(i)"); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 309–10 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that summary-judgment response referencing attached deposition testimonies and reprinting half-page of relevant excerpts was sufficient to point out that evidence). The question remains whether the statements in Stephens's affidavit were competent summary-judgment evidence. "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). Affidavits supporting or opposing summary judgment must be made on personal knowledge and must set forth such facts as would be admissible in evidence. TEX. R. CIV. P. 166a(f).

"An affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally insufficient." *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (per curiam). Moreover, a conclusory affidavit is incompetent evidence that, as a

15

matter of law, does not support summary judgment. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (per curiam, op. on rehearing); *see also James L. Gang & Assocs., Inc. v. Abbott Labs.*, 198 S.W.3d 434, 439 (Tex. App.—Dallas 2006, no pet.) ("Conclusory statements in affidavits are not proper summary judgment evidence if there are no facts to support the conclusions."). An affidavit is conclusory when it expresses "a factual inference without stating the underlying facts on which the inference is based." *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting BLACK'S LAW DICTIONARY 284 (7th ed. 2001)). Conclusory statements in affidavits are not competent evidence because they do not raise fact issues, nor are they credible or susceptible to being readily controverted. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). Contrary to Runion's argument, a conclusory statement in an affidavit is a defect of substance, and we may review on appeal whether a statement is conclusory despite the absence of any objection in the trial court. *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 490 n.7 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Stephens's affidavit avers that he "learned" that Garrick Industries sold his equipment to Rig Fabricators, and that he later "learned" that Rig Fabricators delivered his equipment to Grey Wolf. This language, which suggests that he undertook an inquiry or otherwise somehow received information, is legally

16

insufficient to show that the statements are based upon his personal knowledge. *See Humphreys*, 888 S.W.2d at 470 (holding that affidavits failed to unequivocally show personal knowledge when they stated that they were based upon "own personal knowledge and/or knowledge which [affiant] has been able to acquire upon inquiry"); *see also Ryland Grp.*, 924 S.W.2d at 122 ("An interested witness' affidavit which recites that the affiant 'estimates,' or 'believes' certain facts to be true will not support summary judgment.").

Furthermore, the affidavit does not reveal the underlying facts of how Stephens came to "learn" about Grey Wolf's possession of his equipment. Consequently, Stephens's statements concerning Grey Wolf's possession of the equipment are conclusory. *See LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688–89 (Tex. 2006) (per curiam) (holding that expert opinion concerning cause of injuries and death was not competent summary-judgment evidence because it failed to address, among other things, underlying facts on which opinion was based); *James L. Gang*, 198 S.W.3d at 439 (holding that affidavit averring amount of damages suffered was conclusory because it lacked supporting facts or figures).

Because the challenged statements in Stephens's affidavit do not unequivocally show that they are based on personal knowledge and there are no underlying facts in the affidavit to support them, we hold that the statements

17

concerning Grey Wolf's possession of the equipment are incompetent summary-judgment evidence. *See Anderson*, 808 S.W.2d at 55.

## C. Affidavit exhibits

Only two of the exhibits attached to Stephens's affidavit are referenced in support of the allegation that Precision Drilling had possession of the equipment: Exhibit 5, a Grey Wolf "Material Transfer Record" reflecting delivery of an "Emsco C-2 Drawworks" that was "rebuilt by Rig Fab"; and Exhibit 7, a Rig Fabricators invoice to Grey Wolf for "REBUIL[T] CONT EMSCO C2 DRAWWORKS." However, without further explanation, this evidence reflects only that Rig Fabricators rebuilt and delivered a draw works to Grey Wolf. The documents contain some information that could be clues that would permit the tracing of the material at issue. For example, Exhibit 5 references "Gray Wolf Asset # GWD-005-076" and describes its condition as "Rebuilt By Rig Fab. Job # R1451." Exhibit 7 references "WO # R1451," describes the work as "REBUILD CONT EMSCO C2 DRAWWORKS," and identifies "ASSET NO# GWD-005-076." In any case, whatever is shown by these records, on their face they do not permit any inference that parts from the allegedly misappropriated Stephens draw works were incorporated into the rebuilt Grey Wolf draw works equipment or parts thereof. In the context of other evidence, the two exhibits might allow a surmise or suspicion that Precision Drilling has possession of Stephens's equipment. "To

18

raise a genuine issue of material fact, however, the evidence must transcend mere suspicion." *Ridgway*, 135 S.W.3d at 601. Thus, the legal effect of the exhibits attached to Stephens's affidavit is that they are no evidence that Precision Drilling's equipment contains components of the equipment at issue. *Id*.

## D. Judicial admission

Runion alternatively argues that Precision Drilling judicially admitted in the trial court that it had possession of the equipment. At an earlier stage of the proceedings, Stephens moved pursuant to Chapter 47 of the Code of Criminal Procedure for restoration of the draw works. Precision Drilling filed a written objection to Stephens's motion. In that written objection, Precision Drilling advanced several arguments that it later reiterated in its motion for summary judgment. In the course of arguing that it was a good faith purchaser, Precision Drilling stated:

> Garrick, clothed with an indicia of ownership of the Draw Works and all of its accompanying parts sold the Draw Works to Rig Fab, who in turn sold the Draw Works to Precision, which Precision purchased for value in good faith. . . . This voluntary delivery gave Garrick the power to transfer good title to Rig Fab and Rig Fab, subsequently, to Precision. . . . When Precision purchased the draw works from Rig Fab, Precision lacked knowledge of any claims to those parts by Plaintiff.

Moreover, in its later summary judgment motions, Precision Drilling made similar statements concerning possession of the equipment, including the following sentence:

19

Garrick, clothed with indicia of ownership of the Draw Works, including all of its accompanying parts, sold the Draw Works to Rig Fab, which in turn used parts from the Draw Works to repair Precision's damaged draw works, and Precision paid for the repairs, including the used parts, for value in good faith.

(Footnote omitted.) A footnote at the beginning of each motion states: "For purposes of this motion only, the contentions contained in [the petitions] are taken as true." Runion argues that the above statements constituted judicial admissions that relieved him of the burden of producing summary-judgment evidence concerning Precision Drilling's possession of the equipment.

Responding to this argument, Precision Drilling contends that judicial admissions can be made only in pleadings, as opposed to motions or other filings, and that none of the supposed judicial admissions were reflected in the company's pleadings. Precision Drilling additionally argues that it made the referenced statements only for the purpose of articulating its defenses and that it never admitted as fact that it has the equipment.

A judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex. 1993) (per curiam) (citing *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980)). Contrary to Precision Drilling's contention, a judicial admission may be found in filings other than pleadings. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568

20

(Tex. 2001) (holding that party made judicial admission in summary-judgment response and counter-motion for summary judgment). Nevertheless, a judicial admission must be a "clear, deliberate, and unequivocal statement." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996)). An assertion of fact pleaded in the alternative is not a judicial admission. *See Holy Cross*, 44 S.W.3d at 568 (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). When a judicial admission is made, it bars the party who made the admission from disputing it and relieves the opposing party from proving the fact admitted. *Auld*, 34 S.W.3d at 905. "The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted." *Musick*, 650 S.W.2d at 769.

When Precision Drilling's motion challenged whether Runion had evidence to support the "control" element of conversion, *see NXCESS*, 317 S.W.3d at 470, it put that element at issue for summary judgment. *See* TEX. R. CIV. P. 166a(i). Runion, as the "party relying on his opponent's pleadings as judicial admissions of fact," *Musick*, 650 S.W.2d at 769, needed to protect any reliance on Precision Drilling's purported judicial admissions by objecting at that time to the attempt to

21

put the "control" element at issue. However, Runion's response to Precision Drilling's motion for summary judgment does not reflect any assertion of judicial admission. Assuming, without deciding, that Precision Drilling did make one or more judicial admissions that it had possession or control of the equipment, we hold that Runion waived his reliance on such a judicial admission by failing to timely object after Precision Drilling put that element at issue in its motion for summary judgment. *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 765 (Tex. 1987) (holding that defendants could not benefit from purported judicial admission when they failed to timely object to jury question that was contrary to facts admitted in plaintiffs' pleadings); *USAA Cnty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that defendant waived reliance on plaintiff's judicial admissions when defendant failed to object to plaintiff's repeated testimony controverting prior admissions); *cf. United States Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 611 & n.3 (Tex. 2008) (noting that plaintiffs protected their reliance on judicial admission when they objected to statements in defendant's summary-judgment motion that contradicted prior admission).

In summary, (1) Runion did not adequately point out in his summary-judgment response the part of his testimony that he saw the disputed equipment in Grey Wolf's yard; (2) the statements in Stephens's affidavit concerning Grey

Wolf's possession of the equipment were incompetent summary-judgment evidence, because they were conclusory and they were not clearly and unequivocally based on his personal knowledge; (3) the exhibits attached to Stephens's affidavit represented no more than a scintilla of evidence that Precision Drilling had possession of the equipment or parts thereof; and (4) Runion did not timely protect his reliance on Precision Drilling's purported judicial admissions that the company had possession of the equipment or parts thereof. Accordingly, we hold that the trial court did not err in granting summary judgment against Runion on his conversion cause of action.

## III. Theft

In its summary-judgment motion against Runion, Precision Drilling asserted that he had not pleaded a cause of action for theft against the company. Nevertheless, "out of abundance of caution," Precision Drilling argued in the motion that Runion had no evidence of several elements of theft. Runion did not address in his response to the motion for summary judgment these no-evidence arguments concerning theft.

When a no-evidence summary-judgment motion asserts that the nonmovant has no evidence on an element of a claim, the burden shifts to the nonmovant to produce evidence raising a fact issue on the challenged element. *See* TEX. R. CIV. P. 166a(i); *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.]

2009, pet. denied). Runion, not having addressed in the trial court Precision Drilling's no-evidence arguments regarding theft, failed to meet his burden. We hold that the trial court did not err in rendering the requested summary judgment on the theft claim. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) ("The trial court must grant the [no-evidence] motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.").

## Conclusion

We affirm the judgment against Stephens because he failed to address on appeal the standing grounds argued by Precision Drilling in the trial court. We affirm the trial court's judgment against Runion on no-evidence grounds. Because of this disposition, we need not address other arguments relating to Precision Drilling's traditional summary-judgment motion.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.