**Opinion issued January 7, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00574-CV

_____

## GRACEPOINT HOLDING COMPANY, LLC, Appellant

## V.

## FJR SAND, INC., Appellee

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2018-23155**

---

## MEMORANDUM OPINION

FJR, Inc. sued Gracepoint Holding Company, LLC for breaching the terms of

a written contract between the parties. Based on an arbitration agreement in the

contract, Gracepoint moved to compel arbitration of FJR's claims under the Federal

Arbitration Act ("FAA").[1] FJR responded, asserting that Gracepoint had waived arbitration by substantially invoking the judicial process. The trial court denied Gracepoint's motion to compel arbitration.

In one issue, Gracepoint appeals the trial court's order denying its motion.[2] Because FJR did not meet its heavy burden to show that Gracepoint impliedly waived its right to arbitrate under a valid arbitration agreement, we reverse the trial court's denial of the motion to compel arbitration and remand to the trial court.

## Background

Gracepoint is a residential homebuilder. On July 12, 2012, Gracepoint and FJR signed an Independent Contractor Agreement ("ICA"). Under the ICA's terms, FJR agreed to provide grading services and materials to Gracepoint, and Gracepoint agreed to pay FJR for its services and materials.

The ICA also contains an arbitration agreement, requiring

> any claim, controversy, or dispute of any kind among the parties, now existing or arising in the future, whether relating to the interpretation of any provision of this agreement, the rights and obligations of the parties under this agreement, any other agreement relating to, or arising from, the business of Gracepoint or the Work, shall be submitted to binding arbitration under the Federal Arbitration Act, 9 U.S.C 1 et seq. The arbitration shall be conducted by the American Arbitration Association ("AAA").

---

[1]     *See* 9 U.S.C. §§ 1–16.

[2]     *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (permitting interlocutory appeal from order denying motion to compel arbitration under FAA).

In January 2015, FJR filed suit against Gracepoint. FJR alleged that Gracepoint breached the ICA by failing to pay for $27,138 worth of services provided to Gracepoint during the period of April 2010 to March 2014.

Six months later, in September 2015, Gracepoint filed a motion to arbitrate FJR's claims pursuant to the ICA's arbitration agreement. FJR agreed to arbitrate its claims.

The trial court signed an agreed order to arbitrate in October 2015. The court noted that FJR had agreed to arbitrate "as evidenced by the signature of [FJR's] counsel on this Agreed Order." The agreed order required the parties to "institute arbitration." The parties, however, never engaged in arbitration. In November 2017, two years after the agreed order was signed, FJR nonsuited its claims.

In April 2018, FJR filed the instant suit, asserting the same causes of action against Gracepoint that it had asserted in its January 2015 petition in the first suit. As in the first action, FJR claimed that Gracepoint breached the ICA and owed it $27,138 for services it had provided to Gracepoint. There was, however, a difference in FJR's factual allegations. In the earlier 2015 suit, FJR had alleged that it provided the services between April 2010 and March 2014. In the instant suit, FJR initially alleged that it provided the services between April 2010 and April 2014.

Gracepoint answered the suit two weeks after suit was filed, generally denying FJR's claims, asserting the affirmative defense of limitations, and asserting that

3

FJR's claims were subject to the ICA's binding arbitration agreement. To its answer, Gracepoint attached the affidavit of Randall Birdwell, its company representative. In the affidavit, Birdwell testified, "The ICA mandates arbitration as the avenue by which the parties will resolve any disputes." He specifically quoted the ICA's arbitration language. Birdwell concluded his affidavit by stating, "Gracepoint disputes that FJR is owed any additional money, but there is no question that this controversy arises from the contract, and therefore should be arbitrated."

On June 20, 2018, two months after it answered the suit, Gracepoint filed a motion for summary judgment, asserting that FJR's claims were barred by limitations. Gracepoint pointed out that, in the original 2015 suit, FJR had alleged that it last provided services to Gracepoint in March 2014, but in the instant suit, it alleged that it had last provided services to Gracepoint in April 2014. Gracepoint claimed that FJR was attempting to avoid the four-year-statute of limitations by changing the date of when it last provided services to Gracepoint.

One month later—on July 30, 2018—FJR filed its First Amended Petition. FJR changed the date that it last provided services to Gracepoint from April 2014 back to March 2014. FJR asserted a new factual allegation, claiming that Gracepoint had breached the ICA in May 2014 by failing to pay the full amount of FJR's invoices. FJR attached the ICA to its First Amended Petition and incorporated it by reference.

4

That same day, FJR also responded to Gracepoint's motion for summary judgment. FJR asserted that its suit was not time-barred because its claims did not accrue until Gracepoint breached its contractual obligation in May 2014 by failing to pay the invoices in full. Gracepoint passed on submission of the motion, and the trial court never ruled on it.

Gracepoint filed a motion to arbitrate in March 2019 and an amended motion to arbitrate in June 2019. Gracepoint relied on the arbitration agreement in the ICA, asserting that the parties had agreed to arbitrate disputes arising out of or relating to the ICA under the FAA. Gracepoint also pointed out that FJR had agreed to arbitrate its claims in the 2015 suit, which involved the same claims brought in the instant suit. Gracepoint attached the trial court's October 2015 agreed order from the earlier suit, which had ordered the parties to institute arbitration. Gracepoint averred that FJR "never instituted [the] arbitration proceeding," but instead nonsuited its claims two years after the agreed order, in November 2017, when the trial court set the case for dismissal for want of prosecution.

FJR responded to the motion to compel arbitration, requesting denial of the motion for four reasons. First, FJR claimed that the FAA did not apply because the ICA "does not relate to interstate commerce." Second, "it would be inequitable to compel arbitration after the parties [had] engaged in substantial discovery." Third, Gracepoint had filed a motion for summary judgment, seeking relief on the merits.

Finally, FJR claimed that Gracepoint "failed to take any affirmative steps to set up the arbitration [in the 2015 suit]" and that Gracepoint "refused to communicate with [FJR's counsel] when he attempted to set up an arbitration arrangement." However, FJR attached no evidence to support any of the arguments it made in the response.

In its reply, Gracepoint pointed out that the parties had expressly selected the FAA to govern their arbitration agreement; therefore, the FAA applied. Gracepoint also asserted that FJR had failed to meet its burden to show that it had waived its right to arbitration by substantially invoking the judicial process by propounding discovery and by filing its motion for summary judgment.

The trial court conducted a hearing on Gracepoint's motion to compel arbitration. The focus of the hearing was the issue of whether Gracepoint had waived its right to arbitration. Gracepoint asserted that FJR had not shown that Gracepoint's litigation activity had risen to the level necessary to waive arbitration or that FJR had been prejudiced by Gracepoint's conduct. FJR disagreed, asserting that Gracepoint had substantially engaged in litigation by obtaining discovery responses from FJR and by filing its motion for summary judgment.

In support of its position, FJR asserted that the AAA rules would govern the arbitration and that, given the amount of FJR's damages, the dispute would be set for "fast-track" arbitration that did not permit discovery. FJR claimed that, by obtaining discovery responses from FJR, Gracepoint had received information that

6

it would not otherwise have received and that FJR had incurred expenses that it would not otherwise incur. However, FJR did not attach a copy of the discovery to its response, and it did not offer the discovery into evidence at the hearing, leaving the extent and content of the discovery unknown. Although it referenced the AAA's rules, a copy of the rules was not admitted into evidence.

Gracepoint responded that it was uncertain whether the dispute would be subject to "fast-track" arbitration. It stated that, even if it was, the arbitrator had discretion to permit discovery.

FJR also asserted that Gracepoint had substantially engaged in the litigation process by filing a motion for summary judgment and receiving FJR's response to the motion. Gracepoint responded that the motion concerned only the defensive issue of limitations and that it had not obtained a ruling on the motion. Gracepoint pointed out that the documents FJR attached to support its summary-judgment response were documents already in the record.

After the hearing, the trial court signed an order denying Gracepoint's motion to compel arbitration and stay proceedings. This appeal followed.

## Motion to Compel Arbitration

Gracepoint's sole issue on appeal is whether the trial court abused its discretion by denying Gracepoint's motion to compel arbitration.

### A. Legal Principles and Standard of Review

7

The FAA applies to the arbitration agreement in this case because the parties expressly agreed to arbitrate under the FAA.[3] *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (recognizing that, in Texas, parties may expressly agree to arbitrate under FAA). A party seeking to compel arbitration under the FAA must establish (1) the existence of a valid arbitration agreement and (2) that the claims in dispute fall within that agreement's scope. *Id.* "If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

---

[3]     In the trial court, FJR asserted that the FAA does not apply because the ICA did not relate to interstate commerce. *See Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 517 (Tex. 2015) ("The Federal Arbitration Act applies to arbitration clauses in contracts that affect interstate commerce."). However, when parties agree that the FAA governs their arbitration agreement, it is not required that the party seeking to compel arbitration show that the agreement involved interstate commerce. *ACE Cash Express, Inc. v. Cox*, No. 05-15-01425-CV, 2016 WL 4205850, at *6 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op.).

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry*, 551 S.W.3d at 115. We defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo. *Id.* Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo. *Id.*

## B.    Validity and Scope of Arbitration Agreement

The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment. *In re Estate of Guerrero*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Under the summary-judgment standard, copies of documents must be authenticated to constitute competent summary judgment evidence. *Id.* In its brief, FJR asserts that Gracepoint did not establish the existence of an arbitration agreement because Gracepoint did not authenticate the copy of the ICA (which contains the arbitration agreement), attached to its motion to compel arbitration. *See id.* at 704. Gracepoint responds that it was not necessary for it to authenticate the ICA because FJR had judicially admitted the existence of the ICA, and all its provisions, in its First Amended Petition.

"A judicial admission must be a clear, deliberate, and unequivocal statement." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278

9

(Tex. 1996)). Such an admission "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary." *Id.* (quoting *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 884 (Tex. App.—San Antonio 1996, writ denied)).

Here, we agree with Gracepoint that FJR judicially admitted the existence of the ICA in its First Amended Petition. FJR attached a signed copy of the ICA to its First Amended Petition and incorporated it into the pleading by reference. FJR averred that the services it provided to Gracepoint, and on which it sued, were rendered pursuant to the ICA. Specifically, FJR stated as follows in the First Amended Petition:

> On July 12th[,] 2012, FJR and Gracepoint entered into an Independent Contractor Agreement [ICA] whereby FJR would provide Gracepoint grading materials and grading and clearing services to Gracepoint's lots in its home-building development projects. Gracepoint agreed to pay FJR for said services and materials (the "Contract") on a regular basis. Attached, marked and incorporated herein as Exhibit 1 is a copy of the contract [the ICA].

In short, the underlying basis of FJR's suit depends on the existence of the ICA. We conclude that FJR's First Amended Petition contained "clear, deliberate, and unequivocal" statements that the ICA, and all its provisions, exist. We hold that FJR judicially admitted the existence of the ICA, including the arbitration agreement, and that Gracepoint was entitled to rely on the judicial admission in meeting its burden of proving the existence of a valid arbitration agreement. *See*

10

*Philips v. McNease*, 467 S.W.3d 688, 697 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (determining that plaintiff judicially admitted in his petition existence of document that defendant was entitled to rely on in her motion for summary judgment); *Fisher v. Eagle Equity, Inc.*, No. 05-09-01067-CV, 2011 WL 955593, at *2 (Tex. App.—Dallas Mar. 21, 2011, no pet.) (mem. op.) (holding that, even without copy of contract attached to motion for summary judgment, plaintiff's "own pleadings establish that the services sued upon where rendered pursuant to a contract with [the defendant]").

FJR does not contest any other aspect of the validity of the arbitration agreement nor does it contest that its claims fall within the arbitration agreement's scope. Because the arbitration agreement's validity and scope are otherwise undisputed, we turn to the primary dispute in this case: whether FJR proved that Gracepoint waived its right to arbitration by substantially invoking the judicial process.

## C. Substantially Invoking the Judicial Process

A party's right to arbitrate may be waived by its substantially invoking the judicial process to the other party's detriment. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). However, because the law favors arbitration, a strong presumption exists against waiver, and the party asserting waiver bears a heavy burden of proof. *Id.* Both a substantial invocation of the judicial process and

11

prejudice must be shown; without a showing of both, the high burden is not met. *See Perry Homes v. Cull*, 258 S.W.3d 580, 595 (Tex. 2008); *see also LaLonde v. Gosnell*, No. 16-0966, 2019 WL 2479172, at *3 (Tex. June 14, 2019) (stating that substantial invocation of judicial process and prejudice are distinct concepts).

Whether a party has waived the right to arbitration is decided on a case-by-case basis, considering the totality of the circumstances. *Perry Homes*, 258 S.W.3d. at 591. Factors for courts to consider when determining whether the party has substantially invoked the judicial process include: (1) whether the party asserting the right to arbitrate was the plaintiff or the defendant in the lawsuit, (2) how long the party waited before seeking arbitration, (3) the reasons for any delay in seeking to arbitrate, (4) how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration, (5) whether the party seeking to arbitrate requested the court to dispose of claims on the merits, (6) whether the party seeking to arbitrate asserted affirmative claims for relief in court, (7) the amount of time and expense the parties have expended in litigation, (8) whether the discovery conducted would be unavailable or useful in arbitration, and (9) the proximity in time between the trial setting and the filing of the motion to compel. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015); *Perry Homes*, 258 S.W.3d at 590–92.

Generally, no one factor is dispositive, and waiver may be decided based on only a few of the factors or even a single factor. *See RSL Funding*, 499 S.W.3d at 430. Even in close cases, the presumption against waiver governs. *See id.*

In considering the relevant factors, we note that Gracepoint did not initiate this lawsuit; rather, FJR filed suit against Gracepoint—twice.

Gracepoint's motion to compel arbitration was filed in March 2019, 11 months after FJR filed suit in April 2018. While this is a consideration, courts have determined that "mere delay in moving to compel arbitration is not enough for waiver." *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014) (19-month delay); *see In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (eight-month delay); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (two-year delay).

From the outset of the instant suit, Gracepoint placed FJR on notice that arbitration was required. Gracepoint filed its answer two weeks after FJR filed its original petition. In its answer, Gracepoint asserted that FJR's claims were subject to the binding arbitration agreement. Gracepoint offered the affidavit of its company representative, Birdwell, to support its answer. Birdwell quoted the arbitration agreement, making clear Gracepoint's position that the agreement mandated arbitration of the parties' dispute. *See In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding)

13

(recognizing that burden of demonstrating waiver "falls even more heavily" when party seeking arbitration included demand for arbitration in its original answer) (quoting *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005)).

FJR contends that Gracepoint's delay in requesting arbitration is actually longer than 11 months, citing its first lawsuit against Gracepoint filed in January 2015. Based on that filing, FJR asserts that Gracepoint delayed filing its motion to compel for over four years. However, this assertion must be considered in the context of the entire history of the parties' dispute. FJR's assertion does not acknowledge that the instant motion is Gracepoint's second motion to compel arbitration. Gracepoint filed its first motion to compel in the first suit in September 2015. Nor does FJR's assertion acknowledge that, as a result of Gracepoint's first motion to compel, FJR agreed to arbitrate its claims. The agreed arbitration order, signed by the trial court in October 2015, indicated that FJR had agreed to arbitration at that time. The order also required the parties to institute arbitration.

FJR claims that it attempted to institute arbitration in 2015 but avers Gracepoint refused to arbitrate. But, FJR offered no evidence to support this assertion. FJR also did not offer evidence to show that it requested the trial court to enforce the agreed order's arbitration requirement nor did it show that it sought to resume litigation in the first suit when Gracepoint allegedly refused to arbitrate. As

the plaintiff seeking to recover its damages, FJR had the greatest incentive to resolve the dispute and the burden to prosecute its claims. FJR ultimately nonsuited the first suit in November 2017, two years after it agreed to arbitrate. FJR then waited until April 2018 to refile the instant suit.

Another factor to consider in the waiver determination is Gracepoint's motion for summary judgment. Gracepoint's motion did not seek summary judgment on the merits of FJR's claims. Rather, Gracepoint's motion was defensive, asserting that FJR's claims, as pleaded in FJR's original petition, were time-barred.

"A party's litigation conduct aimed at defending itself and minimizing its litigation expenses, rather than at taking advantage of the judicial forum, does not amount to substantial invocation of the judicial process." *G.T. Leach Builders*, 458 S.W.3d at 513 (citing *Keytrade USA, Inc.*, 404 F.3d at 897 (declining to find waiver where movant sought summary judgment "from a defensive posture"); *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 288 (5th Cir. 1993) (declining to find waiver where movant voluntarily appeared in suit and sought removal because it was "purely defensive action to preserve its right of removal and to avoid any possibility of a default judgment")). It is noteworthy that, after FJR amended its petition to allege that its claims accrued later than had been alleged in its original petition, Gracepoint passed on the submission of its motion for summary judgment, and the trial court never ruled on it. While seeking disposition by summary judgment is a factor to

consider, we conclude that, here, it is tempered by the defensive posture of the motion and Gracepoint's decision to pass on the motion. *See Law Firm L.L.P. v. Osborn*, No. 14-14-00892-CV, 2016 WL 444867, at \*23 (Tex. App.—Houston [14th Dist.] Feb. 4, 2016, pet. denied) (concluding defensive posture of motion for summary judgment tempered motion's significance when evaluating whether party substantially invoked litigation process).

Finally, we consider Gracepoint's participation in pretrial discovery. The record shows that FJR initiated discovery by attaching interrogatories, requests for admission, and requests for admission to its original petition. The record, however, does not contain Gracepoint's responses to the discovery.

In its brief, FJR claims that Gracepoint served it with "extensive written discovery" relating to the merits of the case. When determining whether a party substantially invoked the judicial process, we consider (1) how much discovery the party seeking arbitration conducted before moving to compel arbitration and (2) whether the discovery conducted would be unavailable or useful in arbitration. *G.T. Leach Builders*, 458 S.W.3d at 512. Here, we cannot apply these evaluative factors because FJR did not offer the discovery propounded by Gracepoint into the record. Therefore, it is not possible to know the extent or the character of the discovery. The fact that Gracepoint served FJR with discovery alone is not sufficient

to show that it substantially engaged in the litigation process.[4] *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex. 1998) (holding arbitration was not waived by sending 18 interrogatories and 19 requests for production and waiting six months to seek arbitration).

We are mindful that the Supreme Court of Texas has "declined to conclude that the right to arbitrate was waived in all but the most unequivocal of circumstances." *Henry*, 551 S.W.3d at 116. Here, FJR did not meet its heavy burden to demonstrate such unequivocal circumstances. *Compare Perry Homes*, 258 S.W.3d at. at 595–96 (holding that plaintiffs waived right to arbitrate by conducting "extensive discovery about every aspect of the merits," including taking 10 depositions and requesting hundreds of items of merits-based information before requesting arbitration fourteen months after filing suit and only four days prior to scheduled trial date), *with G.T. Leach Builders*, 458 S.W.3d at 513 (holding plaintiffs did not waive arbitration by asserting counterclaims; seeking change of venue; filing motions to designate responsible third parties, for continuance, and to quash depositions; designating experts; and waiting six months to move for arbitration); *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (holding party

---

[4] FJR also claimed at the motion-to-compel-arbitration hearing that the AAA rules govern the arbitration here. It asserted that, under those rules, discovery would not be permitted because FJR's claims would be subject to "fast-track" arbitration. FJR's counsel referenced the AAA rules and stated that he wanted to offer them into evidence, however, the AAA rules do not appear in the record.

17

did not waive arbitration by noticing deposition, serving written discovery, and waiting eight months to move for arbitration).

Although the circumstances here involve certain factors that may indicate waiver—such as filing for summary judgment—the strong presumption against waiver nevertheless prevails in light of the record. *See Branch Law Firm*, 532 S.W.3d at 24. After considering the totality of the circumstances, we conclude that Gracepoint did not substantially invoke the litigation process in contravention of its contractual right to arbitrate.[5] We hold that the trial court abused its discretion when it denied Gracepoint's motion to compel arbitration and stay proceedings.

We sustain Gracepoint's sole issue.

## Conclusion

We reverse the trial court's order denying Gracepoint's motion to compel arbitration and stay proceedings. We remand the case for the trial court to sign an order (1) compelling the parties to arbitrate FJR's claims and (2) staying the proceedings pending completion of the arbitration.

Richard Hightower
Justice

---

[5] Because we have determined that Gracepoint did not substantially invoke the judicial process, we need not address whether FJR was actually prejudiced by Gracepoint's conduct. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 118 (Tex. 2018).

Panel consists of Chief Justice Radack and Justices Landau and Hightower.